IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

_____

PATRICIA WILSON-COKER,                              )
Commissioner of Social Services, *et al.*,          )
                                                    )
            Plaintiffs,                             )
                                                    )
COMMUNITY VISITING NURSE AND HOME                   )
CARE AGENCY, INC; MED-CENTER HOME                   )
HEALTH CARE, INC; PRIORITY CARE, INC;               )
STAFF BUILDERS HOME HEALTH CARE,                    )
INC., and OTHER SIMILARLY SITUATED                  )
HOME HEALTH AGENCIES,                               )
                                                    )
            Plaintiff-Intervenors,                  )
                                                    )
      v.                                            )   Civil Action No. 3:00CV1312 (CFD)
                                                    )
TOMMY G. THOMPSON, Secretary, United                )
States Department of Health and Human Services,     )   December 22, 2004
*et al.*,                                           )
                                                    )
            Defendants, and                         )
                                                    )
ASSOCIATED HOSPITAL SERVICE; and                    )
UNITED GOVERNMENT SERVICES, INC.,                   )
                                                    )
            Additional Defendants.                  )
_____ )

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

<u>**PRELIMINARY STATEMENT**</u>

Plaintiff-intervenor, Med-Center Home Health Care, Inc., ("Med-Center" or "plaintiff") a home health agency participating in the Medicare and Medicaid programs, failed to file claims for Medicare payment within the timely filing period required by regulation.[1]  Upon the expiration of the timely filing period, the fiscal intermediary ("FI"), the contractor responsible for processing claims, sent Time Limit Reject notices to plaintiff-intervenor that informed it that the claims were time-barred and that it could not charge the beneficiary for the services at issue. Facing a recoupment action from the State (which had previously paid for certain home health services under Medicaid but later concluded that, in the State's view, the services should have been covered by Medicare), plaintiff-intervenor appealed the Time Limit Reject notices.

Without in any way contradicting the conclusion that the claims for Medicare reimbursement were time-barred, an Administrative Law Judge (ALJ) dismissed the appeals for lack of jurisdiction.  He then stated in <u>dicta</u> that the Time Limit Reject notices should have informed plaintiff-intervenor of its right to request reconsideration.  As a result, the ALJ found that there was good cause to extend the 60-day period for filing such a request, which had otherwise lapsed.  Knowing that a reconsideration of the Time Limit Reject notices would do it no good because what it wants is Medicare coverage determinations and because there is no question that plaintiff-intervenor failed to file timely claims, plaintiff-intervenor chooses to read

---

[1]    Counsel for plaintiff-intervenors informed counsel for defendants and the Court in a telephonic status conference that only Med-Center continues to pursue its claims in this litigation.  Counsel for plaintiff-intervenors has confirmed in subsequent conversations with counsel for defendants that Med-Center is the only remaining plaintiff-intervenor seeking relief from the Court.  Because the other parties have not formally withdrawn, defendants' motion formally seeks summary judgment against all of the plaintiff-intervenors, but this memorandum addresses only Med-Center because of counsel's representations.

the ALJ's language to say that the ALJ ordered the FI to issue Medicare coverage determinations on claims that were never even filed.

Plaintiffs' reading is untenable. The plain language of the <u>dicta</u> on which plaintiff-intervenor relies does not refer to an obligation on HHS' part to grant coverage determinations on time-barred claims.[2] To reach this erroneous conclusion, plaintiff-intervenor misconstrues a single sentence – "The matter is remanded to the intermediary, which shall treat the request for hearing as a request for reconsideration, with good cause existing for its untimely filing" – in two different ways. <u>First</u>, plaintiff-intervenor argues the ALJ is ordering coverage determinations. He is not; instead he is referring to the right to seek reconsideration from the FI of the Time Limit Reject notices.

<u>Second</u>, plaintiff-intervenor argues that the phrase "with good cause existing for its untimely filing" refers to good cause existing for failing to file timely claims. It does not; instead, it refers to the ALJ's belief that good cause existed for untimely filing of the <u>request for reconsideration</u> of the Time Limit Reject notices. Whether this sentence is read in isolation or in the context of the opinion, there is no other way to read the ALJ's decisions, and plaintiff-

---

[2]    It is the federal defendants' position that because the ALJ dismissed the hearing request for lack of jurisdiction, everything else that follows in the ALJ's opinions is <u>dicta</u>. Federal defendants raised jurisdictional objections to plaintiff-intervenor's Amended Complaint which are before this Court in the federal defendants' Motion to Dismiss and Memorandum in Support Thereof (Docket Number 92). Other than pointing to the fact that the language relied on by plaintiff-intervenor is <u>dicta</u>, these jurisdictional objections will not be addressed in this memorandum. Rather, in this memorandum, federal defendants argue primarily that to the extent the ALJ effectively ordered any relief for plaintiff-intervenor, he ordered the intermediary to grant an appeal of the Time Limit Reject notices, that he found that good cause existed for failure to file a timely request for reconsideration of the Time Limit Reject notices, and that he did not (as plaintiff-intervenor contends) order the intermediary to issue Medicare coverage determinations on non-existent claims.

intervenor's repeated contentions to the contrary are insupportable. Indeed, there is no discussion whatsoever in the ALJ's decisions of "good cause" for missing the six-month deadline for filing claims.

This Court previously denied the parties' cross-motions for summary judgment on these claims "without prejudice to re-filing on a fuller administrative record." In response to the Court's order, the parties have submitted documents that the ALJ had before him when adjudicating plaintiff-intervenor's attempt to appeal the Time Limit Reject notices. *See* Joint Administrative Record ("A.R."), submitted December 16, 2004. These records confirm that plaintiff-intervenor's claims were not simply filed late; they were never filed at all. Moreover, the ALJ sent a letter demonstrating that his concern was only with the failure of the Time Limit Reject notices to explain the statement that the beneficiary could not be charged for the services at issue. Letter from Bruce H. Zwecker, Administrative Law Judge, to Associated Hospital Service of Maine, A.R. HHS 0011-12. The ALJ does not in any way question the conclusion that plaintiff-intervenor's failure to submit timely claims barred it from recovering from Medicare, nor does he state what the results of any reconsideration of the sentence concerning charging the beneficiary would or should be.

Because the language in the ALJ's decisions is <u>dicta</u>, and because it in no way orders defendants to make coverage determinations but at most states the ALJ's view that plaintiff-intervenor should be allowed to seek reconsideration of the Time Limit Reject notices, plaintiff-intervenor's claims should be dismissed.[3] While plaintiff-intervenor purports to have a separate

---

[3]    As stated in the parties' December 16, 2004, letter to the Court enclosing the joint administrative record, the parties have submitted with the record only a sample of the ALJ

(continued...)

claim under the Declaratory Judgment Act, there is no justiciable controversy between plaintiff-intervenor and defendants that exists separate and apart from plaintiff-intervenor's misreading of the ALJ's decisions.  Defendants' summary judgment motion should therefore be granted in full.

## STATUTORY AND REGULATORY BACKGROUND

### A.    The Medicare Program

The Medicare program, enacted as Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq., is a federally-administered program that provides health insurance for the elderly and disabled.  Part A of Medicare, 42 U.S.C. § 1395c et seq., provides coverage for hospital, skilled nursing facility, and home health services.[4]  Home health services include, inter alia, items and services such as part time or intermittent skilled nursing care, physical or speech therapy, medical social services provided under the direction of a physician, and the part time or intermittent services of a home health aide.  See 42 U.S.C. § 1395x(m).

Home health services are provided by private home health agencies (HHAs), which are "providers of services" under Medicare.  42 U.S.C. § 1395x(u).  When an HHA provides services that the HHA believes are covered by Medicare, the HHA submits a claim for payment to a fiscal intermediary.  A fiscal intermediary is generally a private insurance company, under contract with the Secretary, responsible for determining the amount of Medicare reimbursement due a provider in accordance with Medicare rules.  42 U.S.C. §§ 1395g, 1395h(c)(1).

---

[3](...continued)
decisions because they are, for all practical purposes, identical.  The parties are, however, prepared to produce all of the decisions at the Court's request.

[4]    Part B of Medicare, 42 U.S.C. § 1395j et seq., establishes a voluntary program of supplemental insurance covering physicians' and other health services, and is not at issue in this case.

Medicare has established specific procedures for submitting and processing claims. See 42 C.F.R., part 424. Part A claims, such as those for home health services, may be filed only by providers (or, in rare cases, by beneficiaries) which must furnish "sufficient information to determine whether payment is due and the amount of payment." 42 C.F.R. §§ 424.5(a)(5), (6); see also 42 C.F.R. §§ 424.51(a), 424.53(a). The claim must be timely filed with the appropriate intermediary on a form prescribed by the Centers for Medicare and Medicaid Services (CMS),[5] an agency within HHS, and generally must be signed by the beneficiary.[6] 42 C.F.R. §§ 424.32, 424.44. Claims for services must be mailed or delivered to the intermediary on or before December 31 of the following year for services that were furnished during the first nine months of a calendar year, and on or before December 31 of the second following year for services that were furnished during the last three months of the calendar year. 42 C.F.R. §§ 424.44(a)(1), (2). The Medicare regulations also delineate what constitutes a claim for purposes of meeting these time limits. See 42 C.F.R. § 424.32(a).

A written statement of intent (SOI) to claim Medicare benefits was designed to alert CMS that a claim for benefits would be filed.[7] A properly filed SOI served as a placeholder allowing

---

[5]    CMS was formerly known as the Health Care Financing Administration, or HCFA.

[6]    In the case of dually-eligible beneficiaries, those entitled to both Medicare and Medicaid, a state that has made Medicaid payments for a beneficiary may request a provider to file a claim with Medicare without a beneficiary's signature. See State of Conn. Dept. of Income Maintenance v. Shalala, No. 2:91CV546 (AHN) (D Conn., Recommended Ruling, June 24, 1994, approved Aug. 25, 1994). This is because when the state makes a Medicaid payment, it is subrogated to the right of the beneficiary to seek payment from Medicare. See 42 U.S.C. §§ 1396a(a)(45), 1396k(a)(1)(A); 42 C.F.R. §§ 433.145(a)(1), 433.146(a)(1).

[7]    Although the SOI procedures were in effect during the time periods involved in
(continued...)

six additional months within which an actual claim had to be filed. To be considered valid, an

SOI had to: (1) be filed with CMS or an intermediary within the time limits specified in 42

C.F.R. § 424.44, and (2) indicate the intent to claim Medicare payment for specified services

furnished to an identified beneficiary. A claim that met the requirements of 42 C.F.R. §

424.32(a) then had to be filed within six (6) months after the month in which the intermediary

advised the submitter of the SOI. See 42 C.F.R. § 424.45. Thus, a Statement of Intent in and of

itself did not constitute a claim but rather, acted as a placeholder for filing a timely and proper

claim within the six (6) month period. See Program Memorandum on Statements of Intent to

File Claims for Claims Filing Periods That End On December 31, 1999, AB-99-88 (December,

1999) (Attachment 1 to Intervenor Complaint) at 5. If a provider failed to file a claim within the

six months after CMS indicated a valid Statement of Intent was filed, the provider may have

received a "Time Limit Reject" Notice from the FI. See Time Limit Reject Notice (Attachment 7

to Intervenor Complaint); see also Sample of Time Limit Reject Notices ("Time Limit Reject

Notices") A.R. HHS 0035, 0041, 0048, 0051, 0054, 0057. This Notice informed the provider

that no claim had been received within six months after receipt of an SOI, and rejected the case,

based on 42 C.F.R. § 424.45(c). Id. In addition, each Notice informed the provider that the

beneficiary could not be charged for any related service for which no timely claim was submitted.

See Health Care Financing Administration Program Memorandum, Transmittal A-99-52

(December 1999) at 5 (Attachment 1 to this memorandum) ("When a beneficiary requests that a

claim be submitted to Medicare, you must promptly submit a demand bill to Medicare. If you

---

[7](...continued)
this case, CMS has since repealed them. See 69 Fed. Reg. 21963 (April 23, 2004).

fail to do so, you will be prohibited from charging the beneficiary or other third-party payers that might otherwise make payment on behalf of the beneficiary").

When a timely claim under Medicare Part A is timely filed with the FI, the FI makes an initial determination as to whether the items and services furnished are covered and the amount of any payment due.  See 42 C.F.R. §§ 405.702, 405.704(b), (c)(1), 421.100(a), (b).  If a determination of non-coverage is made because the services furnished were not reasonable and necessary or were excluded from coverage, the intermediary further ascertains whether payment can be made on the ground that neither the beneficiary nor the provider knew, or reasonably could have been expected to know, that payment for the services furnished would not be made. See 42 C.F.R. §§ 405.704(b)(12), (c)(2); 411.402.

If the provider is dissatisfied with the initial determination on a claim, it may seek reconsideration.  42 C.F.R. §§ 405.710, 405.711.  Following reconsideration, a provider may request a hearing before an ALJ.  42 C.F.R. §§ 405.720, 405.722.  If not satisfied with the ALJ's determination, the provider may seek further review by the Departmental Appeals Board (DAB). 42 C.F.R. § 405.724; 20 C.F.R. §§ 404.967-404.969.[8]  The DAB also may take the case on its own motion.  20 C.F.R. § 404.969.  A provider that has exhausted all of these administrative remedies then may seek judicial review of the Secretary's final decision under 42 U.S.C. § 1395ff(b) (incorporating 42 U.S.C. § 405(g) of the Social Security Act).

B.     **The Medicaid Program**

---

[8]     Under 42 C.F.R. § 405.701(c), title 20 of the Code of Federal Regulations is applicable to matters arising under 42 C.F.R. §§ 405.701-405.753 to the extent that a specific provision is not contained in 42 C.F.R.§§ 405.701-405.753.  See 42 C.F.R. § 405.701(c).

Medicaid, established under Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq., is a jointly funded state-federal program that pays for necessary medical care for qualifying low-income individuals. The Medicaid program is considered the "payor of last resort." 42 U.S.C. §§ 1396a(a)(25)(A)-(B).

As a corollary to this requirement, states are required to seek reimbursement from third parties (including – where appropriate – Medicare) for medical assistance (Medicaid benefits) provided to Medicaid beneficiaries "in any case where legal liability is found to exist . . . and where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery . . . ." 42 U.S.C. § 1396a(a)(25)(A); 42 C.F.R. §433.139. As a condition of eligibility, states require Medicaid beneficiaries to assign to the state "any rights . . . to support . . . for the purpose of medical care . . . and to payment for medical care from any third party . . . ." 42 U.S.C. §§ 1396a(a)(45), 1396k(a)(1)(A); 42 C.F.R. §§ 433.145(a), 433.146(a)(1).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff-intervenor alleges that in March of 1996, it received a request from the State of Connecticut to submit information for claims for Medicare reimbursement dating back to 1988 because the State of Connecticut had won a court decision permitting the agency to be the "subrogee of . . . dually eligible beneficiaries." Compl. ¶ 96.[9] While it submitted information for

---

[9]    CMS originally had taken the position that states could not file Statements of Intent, and thus when Connecticut attempted to do so, the intermediary refused to treat the filings as such. Connecticut sued and established that it could request providers to file claims without the necessity of a beneficiary's signature on the claims. See State of Conn. Dep't. of Income Maintenance v. Shalala, No. 2:91CV546 (AHN) (D Conn., Recommended Ruling, June 24, 1994, approved Aug. 25, 1994). Because of the ruling that Connecticut had the right to file the Statements of Intent, the intermediary accepted the Statements of Intent and notified plaintiff-intervenor of the need to file claims.

most of the claims, it failed to submit information for certain claims and therefore received

"Time Limit Reject" notices from the FI for claims that were not submitted within the six-month

time frame.  Id. at ¶ 98; see Time Limit Reject Notices, A.R. HHS 0035, 0041, 0048, 0051, 0054,

0057.  These claims were never submitted.  See Letter from Sandra A. Trionfini to Hon. Bruce

H. Zwecker, July 7, 1997, A.R. HHS 0007 (indicating that Med-Center had not provided the

medical records necessary to process the claims); Letter from Paul D. Duplinsky to Bruce H.

Zwecker, September 26, 1997, A.R. HHS 0016-17 (stating that the fiscal intermediary never

received claims folders for the 37 beneficiaries at issue).  Med-Center pursued administrative

review of the Time Limit Reject notices, and according to the Complaint, these appeals were

denied by the fiscal intermediary.  Compl. ¶ 100.  Med-Center then requested ALJ appeals of the

Time Limit Reject notices.  Id. at ¶ 102.  ALJ subsequently issued Notices of Dismissal and

Remand of Med-Center's appeals, a representative sample of which is included at A.R. HHS

0018-0047.

Med-Center, along with other home health agencies that are no longer part of this case,

filed a complaint on June 15, 2001, asking the Court to order defendants to process these claims,

and filed an amended complaint on August 2, 2001, seeking the same relief.  As explained in the

next section, Med-Center's complaint is based upon a misunderstanding of the ALJ decisions.

Defendants subsequently filed a motion to dismiss for lack of subject-matter jurisdiction, which

this Court denied on September 24, 2002, "without prejudice to filing a motion for summary

judgment on a fuller administrative record."   The parties subsequently filed cross motions for

summary judgment, which this Court denied on March 31, 2003, "without prejudice to re-filing

on a fuller administrative record." In accordance with the Court's order, the parties submitted a

joint administrative record ("A.R.") on December 16, 2004.

## STANDARD OF REVIEW

A motion for summary judgment shall be granted "if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c). The Supreme Court has stated that "the plain language of

Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at

trial." Celotex Corp. v. Catrett, 477 U.S. 317 (1986). When cross motions for summary

judgment are pending, each individual summary judgment motion must be evaluated

independently to determine whether there exists a genuine dispute of material fact and whether

movant is entitled to judgment as a matter of law. Thus, in order to prevail, each party must

sustain his or her burden under Rule 56. Healey v. Thompson, 186 F. Supp.2d 105, 114 (D.

Conn. 2001), aff'd in part, rev'd in part and remanded, Lutwin v. Thompson, 361 F.3d 146 (2d

Cir. 2004).

## ARGUMENT

## I.     THE ADMINISTRATIVE LAW JUDGE'S DECISIONS DO NOT REQUIRE
         COVERAGE DETERMINATIONS

Plaintiff-intervenor asserts that ALJ Zwecker remanded the cases to the fiscal intermediary to make coverage and reimbursement determinations, i.e., a determination on the merits of the claims.  Intervenor Compl. ¶ 102 (emphasis added).  This reading of the ALJ's decisions is wrong.  As an initial matter, once the ALJ determined that he lacked jurisdiction, he had no authority to order the fiscal intermediary to take any further actions.  But even assuming, arguendo, that the ALJ's "remand" language is effective and not dicta, what the ALJ actually directed the fiscal intermediary to do was to permit the provider to seek reconsideration of the Time Limit Reject notices based in particular upon the FI's purported failure to explain the basis for the last line of the Notices, which stated that the provider could not charge the beneficiary for the services.[10]

Further, when the ALJ states at the end of his decisions that the fiscal intermediary shall treat plaintiff-intervenor's "request for hearing as a request for reconsideration, with good cause existing for its [i.e., the request for reconsideration's] untimely filing," Sample of Orders of Dismissal and Remand ("ALJ Orders"), HHS 0066, 0078, 0084, 0090, he was recognizing that the 60-day time period for filing a request for reconsideration of the Time Limit Reject notices had long passed but finding that good cause existed for the late filing of the request for reconsideration.  Thus, when the ALJ decisions refer to "good cause," it is only in the context of the 60 day time period for requesting reconsideration, not to suggest that there was "good cause"

---

[10]    The prohibition on charging the beneficiary was in reality a prohibition on charging the State because, as noted in footnote 6, supra, a state that makes payment under Medicaid is subrogated to the rights of the beneficiary to seek Medicare payment.  It was the State's efforts to recoup its Medicaid payments based on plaintiff-intervenor's failure to file claims within the required time period that led plaintiff-intervenor to become involved in this case.  See Intervenor Compl. ¶ 1.

for failing to file timely claims in the first place.  See ALJ Orders, HHS 0065, 0071, 0077, 0083, 0089.

There is no ambiguity in the language relied on by plaintiff-intervenor, but even if the ALJ had been at all unclear, any such ambiguity would be resolved by examining the language in the context of the opinion.  The ALJ begins his decisions by holding that plaintiff-intervenor had no right to request a hearing before the ALJ because it never filed a request for reconsideration of the Time Limit Reject notices.  ALJ Orders, HHS 0063, 0069, 0075, 0081, 0087 ("a person has a right to a hearing regarding any initial determination . . . only if such initial determination has been reconsidered by the Health Care Financing Administration" – i.e., CMS).  As a result, the ALJ dismissed the request for hearing for lack of jurisdiction.  Id.  From this point forward, the ALJ's decision is dicta.[11]

The ALJ then states that he is remanding the case to the FI "with instructions to treat the appellant's request for hearing as a request for a reconsideration determination so that the appellant will not be denied the opportunity to exercise its right to use the administrative appeals procedure."  Id. at HHS 0063-64, 0069-70, 0075-76, 0081-82, 0087-88.  The ALJ is thus

---

[11]    Plaintiffs' argument that the rest of the decision is binding is the same as arguing that a district court may order reconsideration of an agency decision even after finding that it lacks jurisdiction.  Plaintiffs' argument that the ALJ ordered coverage determinations, in addition to ignoring entirely the text of the decision, is the same as saying that such a district court could order the agency to reach a particular result on the merits, even after finding that it lacked jurisdiction.  Among the many reasons why this makes no sense in this case is the fact that the agency would have lacked appeal rights over such a decision because the ALJ ruled in favor of the agency by dismissing the request for hearing based upon his finding that he had no jurisdiction.  See ALJ Orders, HHS 0061, 0067, 0073, 0079, 0085 (notifying plaintiff-intervenor of its right to appeal); see also Defendants' Memorandum of Law in Support of Motion to Dismiss Intervenors' Amended Complaint at 13-14 (pointing to various cases stating that dicta is not binding and that comments on the merits that follow a decision that the Court lacks jurisdiction are dicta).

explaining that he is remanding the case to enable plaintiff-intervenor to file a request for reconsideration of the fiscal intermediary's Time Limit Reject notices.  He is not stating what the results of the reconsideration should be, or ordering the FI to make a coverage determination on time-barred claims that were never filed.

The ALJ then makes clear in the next paragraph that his particular concern was that the Time Limit Reject notices provided no basis for the statement that the beneficiary may not be charged for any related services, <u>not</u> that the notices denied Medicare coverage based upon the plaintiff-intervenor's undisputed failure to meet the required deadlines.[12]  Specifically, the ALJ quotes the Time Limit Reject notice as follows:

> We did not receive a claim for the above mentioned third party liability case within six (6) months of our request for Medicare bill(s) and supporting documentation.  We are therefore not able to make a coverage decision for services rendered by the home health agency for the requested period.  This case is rejected because the time limit to submit a Medicare bill has expired.  This rejection is based on the Code of Federal Regulations 424.45(c).  The beneficiary may not be charged for any related services.

---

[12]     The statement in the Time Limit Reject notices that the beneficiary could not be charged would not have been difficult to justify in a reconsideration determination.  This statement reflected longstanding Medicare policy.  <u>See</u> Health Care Financing Administration Program Memorandum, Transmittal A-99-52 (December 1999) (Attachment 1 to this memorandum) at 5 ("When a beneficiary requests that a claim be submitted to Medicare, you must promptly submit a demand bill to Medicare.  If you fail to do so, <u>you will be prohibited from charging the beneficiary or other third-party payers that might otherwise make payment on behalf of the beneficiary</u>.") (emphasis added); Home Health Agency Manual, Chapter 2, Section 236, available at <u>http://www.cms.hhs.gov/manuals/11_hha/hh235.asp</u> ("Where the beneficiary request" for Medicare payment "was filed timely . . . but the provider is responsible for not filing a timely claim, the provider <u>may not charge the beneficiary for the services</u> . . . .") (emphasis added).

13

Id. at HHS 0064, 0070, 0076, 0082, 0088.  The ALJ then states that it "was the last sentence of this notice that prompted the appellant to try to appeal the 'Time Limit Reject,'" id. (emphasis added), and that the "intermediary's 'time limit reject' notice did not state its reason for finding that the beneficiary could not be charged for the services at issue."  Id. at HHS 0065, 0071, 0077, 0083, 0089 (emphasis added).

He continues, "Since the determination that the provider could not charge the beneficiary for the services at issue was an initial determination," as defined by HHS regulations, "the provider has a right to request a reconsideration under" 42 C.F.R. §§ 405.710 and 405.712.  Id. at HHS 0065, 0071, 0077, 0083, 0089 (emphasis added).  Again, the ALJ makes clear his understanding that reconsideration was needed based on the failure to justify the statement that plaintiff-intervenor could not, as a result of the denial of coverage, charge the beneficiary.  Even if this statement were wrong rather than based on longstanding Medicare policy, see note 12, it has nothing to do with the conclusion that plaintiff-intervenor's Medicare claims were time-barred; at best, it relates to the question of who is liable as between plaintiff-intervenor and the State of Connecticut.  The ALJ also makes clear that he was only ordering a reconsideration and not reversing the FI's findings or mandating that the reconsideration reach a particular result.

The ALJ concludes the opinion with an explanation of why he believed that the "defects in the notice of the initial determination provide the appellant with good cause for not filing a request for reconsideration within the 60 day time period" – specifically, the intermediary's purported failure to provide complete information "about when and how to request administrative review."  Id. at HHS 0065-66, 0071, 0077-78, 0083-84, 0089-90 (emphasis

added).[13]  The reference to "good cause" thus related to the failure to file a timely request for

reconsideration within 60 days; it did not relate to the issue of good cause for failure to file

Medicare claims within six months of the FI's "request for Medicare bill(s) and supporting

documentation," see note 9, supra, which was the basis for the Time Limit Reject notices.  Id. at

HHS 0064, 0070, 0076, 0082, 0088.

In short, there would have been no basis for an order to the FI to process claims that were

never filed, and the ALJ did not issue such a baseless order.  Every aspect of the reasoning in the

dicta relied on by plaintiff has to do with the right to file a belated request for reconsideration of

the Time Limit Reject notices and specifically, the statement in the notices that the beneficiary

could not be charged.  The ALJ is justifying why there was good cause to allow a request for

reconsideration of that statement well after the deadline for filing one had passed.  Nothing in the

decisions questioned the conclusion that the untimely filing barred plaintiff-intervenor's ability to

recover from Medicare.  Thus, even if, arguendo, the ALJ's "remand" comments were somehow

binding on the Secretary, plaintiff-intervenor's interpretation of the ALJ's opinion is meritless.

---

[13]        The ALJ reasoned that there was good cause for allowing a request for
reconsideration to be filed after the expiration of the 60-day period because what he referred to as
the "initial determination" that the beneficiary could not be charged was defective because it did
not identify itself as an initial determination and thus did not notify plaintiff-intervenor of its
right to file a request for reconsideration.  Id.  It is worth noting that ALJ Zwecker was incorrect
in concluding (after finding that he lacked jurisdiction) that the Time Limit Reject notices were
appealable initial determinations.  To be an appealable initial determination, the decision must
involve a finding by the intermediary that the items and services are "not covered by reason of
§ 411.15(g) or § 411.15(k)" and a finding that the beneficiary or the provider "knew or could
reasonably have been expected to know that such items or services were excluded from coverage
by the program."  42 C.F.R. § 407.704(c).  The Time Limit Reject notices, including the
statement that the beneficiary could not be charged, were based upon plaintiff-intervenor's
conceded failure to meet the deadline for filing claims.  This fact accounts both for the
conclusion that Medicare was not liable for the services, which was something the ALJ never
questioned, and for the conclusion that the beneficiary could not be charged.  See note 12, supra.

Because plaintiff-intervenor is asking this Court to give it more than the ALJ directed, even in dicta, it has failed to state a claim based on the language in the ALJ's opinion.

While the content of the decisions clearly refutes plaintiff's claims, it is worth pointing to the confirmation in the record, as discussed supra, that plaintiff-intervenor did not only miss the deadline as to the claims addressed in the ALJ's decisions; it never filed them at all.  See supra at 8-9.  While the ALJ would have lacked authority under any circumstances to order processing of late-filed claims, and nothing in his decisions even remotely suggests that he was purporting to do so, it would have been particularly anomalous to order coverage determinations for claims that were never filed even after the deadline had passed.[14]

---

[14]     In addition, prior to issuing his decisions, Judge Zwecker sent the fiscal intermediary a letter that was focused entirely on the issue of what he referred to as the "determinations that the provider may not charge the beneficiary for services related to each of these claims," not the conclusion that plaintiff-intervenor was barred from recovering from Medicare.  Letter from Bruce H. Zwecker, Administrative Law Judge, to Associated Hospital Service of Maine, August 8, 1997, A.R. HHS 0011-12.

**II.    PLAINTIFF-INTERVENOR HAS FAILED TO STATE A COGNIZABLE CLAIM UNDER THE DECLARATORY JUDGMENT ACT**

There is no other justiciable issue in this case once the Court resolves the meaning of the ALJ's decisions.  Plaintiff-intervenor asks the Court to declare, under the Declaratory Judgment Act, that:

> a) plaintiffs are bound by the provisions of 42 C.F.R. § 433.139; b) plaintiffs are prohibited from seeking to recoup any monies paid to providers for furnishing covered services to individuals eligible for benefits under both Medicare and Medicaid until the extent of legal liability, if any, for payment is established on the part of any third party for the services rendered; and c) the rights, obligations, and liabilities among the parties hereto, including the procedure under which assessment of an overpayment may be determined, whether any overpayment exists among the parties hereto, and the timeliness of any efforts to enforce any recoupment.

Intervenor Compl. ¶ 120.

The Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, authorizes the federal courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is sought." 28 U.S.C. § 2201(a).  It does not provide an independent basis of subject matter jurisdiction.  Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-72 (1950).  Thus, if plaintiff-intervenor successfully is to assert a claim under the Declaratory Judgment Act, there must be a separate grounds for this Court to assert subject matter jurisdiction over plaintiff-intervenor's claims.  Warner-Jenkinson Co. v. Allied Chemical Corp., 567 F.2d 184, 186 (2d Cir. 1977).  Moreover, in order for a court to be able to award relief under the Declaratory Judgment Act, the nature of the relief sought must be based on a present controversy between the party seeking the relief and the party to which the relief is to be directed.  A court cannot order declaratory relief that is based upon contingent future events that may not occur as

anticipated, or indeed, may not occur at all.  Greater New York Hosp. Ass'n v. U.S., No. 98 Civ

2741, 1999 WL 1021561, at *9 (S.D.N.Y. Nov. 9, 1999) (citing Thomas v. City of New York,

143 F.3d 31, 33 (2d Cir. 1998)).  Where a court has the authority to grant declaratory relief, such

relief under the Act is discretionary, not mandatory.  Wilton v. Seven Falls Co., 515 U.S. 277,

287-88 (1995).

Even assuming that the Court has jurisdiction over plaintiff-intervenor's claims (see

Federal Defendants' Motion to Dismiss), plaintiff-intervenor's claim for declaratory relief does

not relate to the Secretary.  Subsections (a) and (b) of paragraph 120 of the Complaint are

expressly directed only at the original plaintiffs, who are no longer parties, and do not concern

the Secretary, and subsection (c) of paragraph 120 also does not involve the Secretary inasmuch

as the "overpayments" that were assessed against the plaintiff-intervenors were overpayments of

Medicaid funds, assessed and recouped by Connecticut.  Once the Court has resolved the

meaning of the ALJ opinion, in other words, any remaining dispute is between the State of

Connecticut and plaintiff-intervenor.

Even if the Court should find that the vague, omnibus declaratory relief sought in

subsection (c) of paragraph 120 relates to the Secretary, the Court must deny relief for the further

reason that there is no present controversy between plaintiff-intervenor and the Secretary.

Moreover, the relief requested in subsection (c) asks the Court to declare what HHS' procedures

generally should be and to decide claims as to which the Court lacks jurisdiction due to a failure

to exhaust administrative remedies which is a jurisdictional prerequisite.  Shalala v. Illinois

Council on Long Term Care, 529 U.S. 1 (2000).  A present controversy is a prerequisite to a

court's power to grant declaratory relief.  See 21 U.S.C. § 2201.  This Court cannot therefore

18

render an opinion on future, hypothetical recoupments that are not before it, and if plaintiff-intervenor's request for relief in subsection (c) were construed in a narrow context as relating only to the specific matters before ALJ Zwecker, as demonstrated above, plaintiff-intervenor has failed to state a claim because it misunderstands the meaning of the ALJ's decisions. Thus, assuming that some provision of plaintiff-intervenor's count for declaratory relief is directed at the Secretary, this Court has no jurisdiction to hear it, nor has plaintiff-intervenor managed to state a cognizable claim for which the Declaratory Judgment Act can provide it relief.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant defendants' Motion for Summary Judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KEVIN J. O'CONNOR
United States Attorney

PATRICK F. CARUSO
Assistant United States Attorney

CAROLYN A. IKARI
Assistant United States Attorney

Of Counsel                        SHEILA M. LIEBER
DONALD H. ROMANO                  Deputy Branch Director
Attorney
Office of the General Counsel
Department of Health              _____
and Human Services                SAMUEL C. KAPLAN
                                  U.S. Department of Justice
                                  Civil Division
                                  Federal Programs Branch,

19

P.O. Box 883
Washington, DC  20044
(202) 514-4686 (phone)
(202) 616-8202 (fax)
Federal Bar No. CT26054

Attorneys for Defendants

Dated:  December 22, 2004

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of December, 2004, copies of the foregoing

Defendants' Motion for Summary Judgment on Plaintiff-Intervenor's Amended Complaint,

Memorandum of Law in Support of Defendants' Motion for Summary Judgment, and

Defendants' Local Rule 9(c)(1) Statement of Material Facts Not in Dispute were served, by

Federal Express, addressed to the following:

> David Wynn
> Arent Fox
> 1675 Broadway, 25th Floor
> New York, New York  10019-5820

_____

Samuel C. Kaplan