UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-------------------------------------------------------------------x

PATRICIA WILSON-COKER, Commissioner of Social  :
Services, and CONNECTICUT STATE DEPARTMENT  :
OF SOCIAL SERVICES; and ELLEN JOHNSON,  :
IRMA YOXALL, and JESSIE VEREEN, on behalf  :
of themselves and all others similarly situated,  :
  :
        Plaintiffs,  :
  :
  :  Civil Action No.
  :  3:00 CV-1312 (CFD)
  :
COMMUNITY VISITING NURSE AND HOME  :  PLAINTIFF-
CARE AGENCY, INC.; MED-CENTER HOME  :  INTERVENOR'S
HEALTH CARE, INC.; PRIORITY CARE, INC.;  :  MEMORANDUM
STAFF BUILDERS HOME HEALTH CARE, INC.  :  OF LAW IN
and OTHER SIMILARLY SITUATED HOME  :  SUPPORT OF
HEALTH AGENCIES,  :  MOTION FOR
  :  SUMMARY JUDGMENT
  :
        Plaintiffs and Intervenors,  :
  :
  :
  :
  v.  :
  :
  :
TOMMY THOMPSON, et al.,  :
  :
        Defendants,  :
  :
ASSOCIATED HOSPITAL SERVICE; and  :
UNITED GOVERNMENT SERVICES, INC.,  :
  :
        Additional Defendants.  :

-------------------------------------------------------------------x

Arent Fox PLLC
1675 Broadway
New York, New York  10019

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------x

PATRICIA WILSON-COKER, Commissioner of Social      :
Services, and CONNECTICUT STATE DEPARTMENT         :
OF SOCIAL SERVICES; and ELLEN JOHNSON,             :
IRMA YOXALL, and JESSIE VEREEN, on behalf          :
of themselves and all others similarly situated,   :
                                                   :
                        Plaintiffs,                :
                                                   :      Civil Action No.
                                                   :      3:00 CV-1312 (CFD)
                                                   :
COMMUNITY VISITING NURSE AND HOME                  :      PLAINTIFF-
CARE AGENCY, INC.; MED-CENTER HOME                 :      INTERVENOR'S
HEALTH CARE, INC.; PRIORITY CARE, INC.;            :      MEMORANDUM OF LAW
STAFF BUILDERS HOME HEALTH CARE, INC.              :      IN SUPPORT OF MOTION
and OTHER SIMILARLY SITUATED HOME                  :      FOR SUMMARY
HEALTH AGENCIES,                                   :      JUDGMENT
                                                   :
                                                   :
                 Plaintiffs and Intervenors,       :
                                                   :
                                                   :
                                                   :
                        v.                         :
                                                   :
                                                   :
TOMMY THOMPSON, et al.,                            :
                                                   :
                        Defendants,                :
                                                   :
ASSOCIATED HOSPITAL SERVICE; and                   :
UNITED GOVERNMENT SERVICES, INC.,                  :
                                                   :
                 Additional Defendants.            :

------------------------------------------------------------------x

     Plaintiff-Intervenor Med-Center Home Health Care, Inc. ("Med-Center"), by and through

its attorneys Arent Fox PLLC, hereby submits this memorandum of law in support of its motion

for summary judgment against defendants Tommy G. Thompson as Secretary of the United

States Department of Health and Human Services, et al. (collectively the "Federal Defendants").

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

I.    BACKGROUND .................................................................................................... 2

      A    The Nature of The Action ............................................................................. 2

      B    The Plaintiffs-Intervenors' Amended Complaint ........................................ 3

II.   SUMMARY OF ARGUMENT ............................................................................. 5

III.  MED-CENTER IS ENTITLED TO AN ORDER COMPELLING THE
      FEDERAL  DEFENDANTS TO PROCESS THE CLAIMS .................................. 7

      A    Standard for Summary Judgment .................................................................. 7

      B    Background of The Medicare and Medicaid Programs .................................. 8

            1.    The Medicare Program ........................................................................ 8

            2.    The Medicaid Program ........................................................................ 9

            3.    The Medicare Maximization Project ................................................. 10

      C    The Undisputed Factual Record Involving Med-Center's Claims ............... 10

      D    Appeal of the Time Reject Notices and Judge Zwecker's Remand
            Decisions ....................................................................................................... 13

      E    The Record Establishes that the ALJ Ordered the Fiscal Intermediaries to
            Make Coverage Determinations .................................................................... 15

            1.    The ALJ Decisions Facially and Unequivocally Demonstrate that
                  the Federal Defendants Must be Process the Claims ......................... 16

            2.    The Contemporaneous Conduct of the Federal Defendants
                  Indicates they Understood the ALJ's Decisions as a Remand to
                  Issue Reconsidered Determinations .................................................... 17

            3.    The Federal Defendants' Remedy Was to Appeal – Not Ignore –
                  the ALJ Decisions .............................................................................. 19

IV.   DECLARATORY JUDGMENT CLAIM .............................................................. 21

      A    Med-Center Has A Present Controversy Against the Federal Defendants ... 21

      B    The Court Should Declare that the Federal Defendants are in Violation of
            Federal Law by Allowing States to "Pay and Chase" Provider Claims
            Without a Waiver ........................................................................................... 23

      C    Med-Center is Entitled to a Declaration as to Whether the Claims at Issue
            Must be Processed .......................................................................................... 24

CONCLUSION .............................................................................................................. 25

# TABLE OF AUTHORITIES

## CASES

Page

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242 (1986)...................................................................7

Black v. Interstate Commerce Comm'n,
   737 F.2d 643 (7th Cir. 1984) .......................................................20

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986)...................................................................7

City of New York v. United States Dep't of Commerce,
   739 F. Supp. 761 (S.D.N.Y. 1990) ...............................................21

Greater N.Y. Hosp. Ass'n v. United States,
   No. 98 Civ. 2741, 1999 WL 1021561 (S.D.N.Y. Nov. 9, 1999) ...........22, 23

Guy v. Sullivan,
   736 F. Supp. 1255 (W.D.N.Y.  1990) ............................................18

Hart v. Myers,
   183 F. Supp. 2d 512 (D. Conn. 2002) ...........................................7

Howard v. Heckler,
   661 F. Supp. 654 (N.D. Ill. 1986) ................................................20

New York v. Shalala,
   119 F.3d 175 (2d Cir. 1997)........................................................9

Reg'l Econ. Cmty. Action Program Inc. v. City of Middletown,
   No. 00-6318, 2002 U.S. App. LEXIS 1769 (2d Cir. Feb. 5, 2002) ...........7

Skelly Oil Co. v. Phillips Petroleum Co.,
   339 U.S. 667 (1950)..................................................................22

Warner-Jenkinson Co. v. Allied Chem. Corp.,
   567 F.2d 184 (2d Cir. 1977).......................................................22

## STATUTES

20 C.F.R. § 404.929 ....................................................................20

20 C.F.R. § 404.930 ....................................................................20

20 C.F.R. § 404.967 ....................................................................20

42 C.F.R. §§ 405.701 - 405.753........................................................13

42 C.F.R. § 405.704 ................................................................................16

42 C.F.R. § 405.717 ............................................................................15, 20

42 C.F.R. § 405.720 ................................................................................16

42 C.F.R. § 405.724 ............................................................................19, 20

42 C.F.R. §§ 409.42 - 409.43 ......................................................................9

42 C.F.R. §§ 409.44 - 409.45 ......................................................................9

42 C.F.R. 424.32 ..................................................................................12

42 C.F.R. 424.44 ..................................................................................11

42 C.F.R. § 424.45 ................................................................................12

42 C.F.R. § 433.136 ...............................................................................10

42 C.F.R. § 433.138 ...................................................................6, 11, 23, 24

42 C.F.R. § 433.139 ...................................................................6, 11, 23, 24

28 U.S.C. § 1361 ..................................................................................15

42 U.S.C. §§ 1395 .............................................................................8, 9, 21

42 U.S.C. § 1396 ...............................................................................9, 10

The core issue between Med-Center the Federal Defendants remains the legal interpretation of certain decisions rendered by Administrative Law Judge Bruce H. Zwecker ("ALJ Zwecker").

In 2002, Med-Center and the Federal Defendants fully briefed and submitted cross-summary judgment motions, which the Court denied without prejudice on the ground that it required a fuller record.[1]  Thus, Med-Center will not burden the Court with a detailed analysis of the controlling federal statutes and regulatory framework governing the government programs involved.  However, should the Court seek a more comprehensive background than the summary provided herein, Med-Center respectfully refers the Court to its Local Rule 9 statement filed herewith, as well its April 2002 brief in support of its previous summary judgment motion.

## I.     **BACKGROUND**

### A     **The Nature of The Action**

On June 15, 2001 Med-Center was one of four Home Heath Agencies who moved to join in an existing action between the State of Connecticut Department of Health and Human Services ("Connecticut" or the "State") and the United States Department of Health and Human Services.[2]  The original inter-governmental dispute focused on the coordination of benefits under the Medicare and Medicaid programs for individuals eligible to participate in both programs.  In particular, the litigation involved procedures when a state makes payment to health care providers (such as Med-Center) for medical services under the Medicaid program, but another party, such as the Medicare program, may also be liable for the cost of furnishing those services.

The original dispute traces its underpinnings to 1996, when Connecticut initiated

---

[1] The parties have assembled documents that were either provided to the Administrative Law Judge or contemporaneously related to the decision to facilitate the Court's ability to interpret and apply the decisions.

[2] Med-Center is the only Home Health Agency still seeking relief from this Court.  In the intervening two years, Staff Builders Home Health Care, Inc., another plaintiff-intervenor, filed for protection under the Chapter 11 bankruptcy code.  Its claims were resolved in that forum.  Priority Care, Inc., also an plaintiff-intervenor, is no longer participating in this litigation.  Community Visiting Nurse and Home Care Agency, Inc. had previously dropped out of the case.

recoupments against certain health care providers. The recoupments were predicated on the basis that the providers should not have been paid for services long since rendered because other liable parties may be potentially liable for the services exist (specifically, Medicare). (See Joint Administrative Record (the "Record") at 0003).[3] The Federal Defendants had rejected this view and believed Connecticut should not compel providers to submit claims to Medicare. At issue in the original action were the regulations governing dually eligible individuals, i.e. Medicare beneficiaries and Medicaid recipients, including 42 C.F.R. §§ 433.135 to 433.154 (federal regulations on Third Party Liability), Health Care Financing Administration ("HCFA" now Centers for Medicare and Medicaid Services ("CMS")) Program Memorandum AB-99-88 (Amended Intervenor Complaint, Exhibit 1), and the HCFA State Director letter dated Nov. 19, 1996. (Id. at Exhibit 2). Med-Center was one of many providers that served individuals who are dually eligible, was caught squarely in the middle of the governmental dispute. See Record at 0001.

Ultimately the two governmental agencies settled their dispute in 2003. However, the claims of the providers were not addressed and the validity and effect of the 1996 program memorandum were not addressed by the Court.

**B      The Plaintiffs-Intervenors' Amended Complaint**

On August 2, 2001, the Plaintiffs-Intervenors, including Med-Center, served their Amended Intervenor Complaint asserting three counts. The first count, which was solely directed to the state of Connecticut, alleged that Connecticut was in violation of federal law by wrongfully recouping paid home health services rendered by Med-Center, prior to first identifying potentially liable third parties (Amended Intervenor Complaint ¶¶41-68). It was

---

[3] References to the Record are to the jointly-submitted administrative record submitted to the Court by the Federal Defendants on December 16, 2004.

alleged that Connecticut was violating the regulations governing dually eligible individuals, 42 C.F.R. §§ 433.135 to 433.154 (federal regulations on Third Party Liability), HCFA Program Memorandum AB-99-88 (Amended Intervenor Complaint, Exhibit 1), and the HCFA State Director letter dated Nov. 19, 1996 (Id. at Exhibit 2), which directed state Medicaid programs not to require providers to submit claims for Medicare coverage determinations unless the providers had a belief the claims met the Medicare eligibility requirements. Specifically, the Amended Complaint alleged, Med-Center alleged, *inter alia*, that federal approval by the Health Care Financing Administration ("HCFA" now known as CMS) was required for states to pursue "pay and recovery", commonly referred to as "pay and chase" recoupments (Amended Intervenor Complaint ¶51). Under "pay and chase" a state pays a provider's Medicaid claim and then later seeks reimbursement from a liable third party. See Rule 9 stmt. ¶ 81. The norm, though, is for states to undertake "cost avoidance," whereby the probable liability of a third party is established by the state at the time the claim is filed by the provider with Medicaid. See Rule 9 stmt. ¶ 72. Thus, the first count alleged that Connecticut was violating basic tenets of federal law, and in violation of the 1996 Medicare directive. Central to the count was the fact that the Federal Defendants never granted Connecticut the necessary waiver for it to engage in "pay and chase". (See Federal Defendants' Response to Plaintiff-Intervenors' Request for Admissions, attached to the Wynn Aff. as Exhibit D). The claim against Connecticut is not before the Court because it was dismissed by the Court on jurisdictional grounds under the Eleventh Amendment.

Med-Center's second count, against the Federal Defendants, seeks traditional mandamus relief and is ripe for summary judgment. Med-Center asks the Court to interpret and apply a series of substantially similar decisions by ALJ Zwecker that direct the processing of Med-Center's claims by the federal fiscal intermediaries. Because Med-Center had been subjected to

"pay and chase", a large number of claims were directed by Connecticut to be submitted to a federal fiscal intermediary four to six years after the services were rendered. A small subset of these claims were not received by the fiscal intermediary in time, and became the subject of "Time Reject Notices."

Med-Center subsequently filed requests for hearings before and ALJ, and the Time Reject Notices came before Judge Zwecker. The ALJ issued the subject decisions. It is Med-Center's position, based on the text of the ALJ decisions, that the ALJ ordered processing of the claims on the merits, with good cause having been found for their late filing.[4] An order is thus sought directing the Federal Defendants to accept and process <u>all claims</u> filed by Med-Center and make Medicare coverage and reimbursement determinations. (Amended Intervenor Complaint ¶117).

Finally, in their third count, Med-Center seeks a declaration of the rights and obligations of the parties in connection with the service of dually eligible patients. It contends that the Federal Defendants are in violation of federal law for allowing states (such as Connecticut) to engage in "pay and chase" without the waiver required by federal law.

## II.    <u>SUMMARY OF ARGUMENT</u>

Med-Center respectfully submits that the claims at issue are purely legal questions involving compliance with federal law. Med-Center is entitled to summary judgment on its second count, which seeks an order enforcing the decisions rendered by ALJ Zwecker. Those decisions remanded the disputed provider claims (which themselves are the subject of the Connecticut recoupments) to the Medicare fiscal intermediaries for coverage determinations as to whether the claims are covered by the Medicare program.

---

[4] ALJ Zwecker's good cause finding is predicated upon the complex nature of the process to convert Medicaid claims into Medicare claims. <u>See</u> Fanning Aff. attached to Wynn Aff. as Exhibit B; Rule 9 stmt. at ¶¶ 137-149.

The record supports summary judgment.  There is no dispute that Med-Center was directed by Connecticut to submit the claims to the federal fiscal intermediaries, and that the claims were made pursuant to a "pay and chase" methodology.  There is also no dispute that the Federal Defendants failed to process the claims because they were the subject of "Time Reject Notices."  After administrative hearings, ALJ Zwecker remanded the claims to the fiscal intermediaries to make coverage determinations, finding, *inter alia*, that "good cause" existed for their late filing.  ALJ Zwecker was clear, holding, "[t]he matter is remanded to the intermediary, which shall treat the request of hearing as a request for reconsideration, with good cause existing for its untimely filing."  In no uncertain terms, Judge Zwecker contemplated proceedings to make coverage determinations.  (See ALJ Decisions by Bruce H. Zwecker).

The Federal Defendants did not act upon the remand and the government neither processed the claims nor appealed the decisions.  As a result, the ALJ decisions became final.  Here, the Federal Defendants now argue these orders should be construed as "dismissals."  (ALJ Zwecker used both the term "dismissal" and "remand" in his rulings).[5]  Med-Center submits that the ALJ unquestionably directed the Federal Defendants to process the claims, and the contemporaneous conduct of the parties is consistent with that interpretation.  See Rule 9 ¶ 141.  Mandamus to enforce the 37 decisions is therefore warranted.

Med-Center also seeks a declaratory judgment against the Federal Defendants.  This count is premised on the Federal Defendants' willful practice of allowing states to recoup payments from providers (i.e., engage in "pay and chase") without a waiver, which the Federal Defendants admit they were not given here.  See 42 C.F.R. §§ 433.138; 433.139(e).  The third count highlights the lack of good faith in the Federal Defendants' position.  At the time the

---

[5] It is noteworthy that the letterhead of the ALJ decisions is a standard form with the heading of "Notice of Dismissal and Remand" – though the substance of the decisions is that of a remand.

action was started, the Federal Defendants agreed with Med-Center's position that Connecticut was in violation of the "pay and chase" regulations governing the program and in violation of 42 C.F.R. §§ 433.135 to 433.154 (federal regulations on Third Party Liability), HCFA Program Memorandum AB-99-88 (Amended Intervenor Complaint, Exhibit 1), and the HCFA State Director letter dated Nov. 19, 1996 (Id. at Exhibit 2). In fact, in 2001, the Federal Defendants did not "object" to the plaintiffs-intervenors effort to intervene. Now, however, after the 2003 settlement, the Federal Defendants have "flipped" their position and are apparently content to disavow federal law and allow states to disregard the regulations governing "pay and chase". The third count therefore asks the Court to uphold the rules and issue a broad declaration that "pay and chase" is not permitted absent a CMS waiver. This is the very position the Federal Defendants maintained from 1996 to 2003.

## III.    MED-CENTER IS ENTITLED TO AN ORDER COMPELLING THE FEDERAL DEFENDANTS TO PROCESS THE CLAIMS

### A    Standard for Summary Judgment

Summary judgment will be granted to a moving party when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Reg'l Econ. Cmty. Action Program Inc. v. City of Middletown, No. 00-6318, 2002 U.S. App. LEXIS 1769 (2d Cir. Feb. 5, 2002); Hart v. Myers, 183 F. Supp.2d 512, 517 (D. Conn. 2002). Furthermore, "when a motion for summary judgment is properly supported by documentary and testimonial evidence… the nonmoving party may not rest upon the mere allegations or denials of the pleadings, but rather must preset sufficient probative evidence to establish a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); Hart, 183 F. Supp.2d at 517.

This case is proper for summary judgment because it involves a purely legal question of

the Federal Defendants' compliance with federal law. Specifically, Med-Center's claims against the Federal Defendants are predicated on the Federal Defendants' failure to process claims subject to the Time Reject Notices. The Court must compel the Federal Defendants to process on the merits the claims that are subject to the Time Reject Notices. Summary judgment on the declaratory judgment count is warranted because there is no dispute that no waiver was given, yet the Federal Defendants allowed states to disregard 42 C.F.R. §§ 422.138; 433.139(e) and engage in "pay and chase" to the detriment of the providers. See Rule 9 stmt. ¶¶ 79 to 89; 145.

**B       Background of The Medicare and Medicaid Programs**

The provider claims at issue here involve patients who are dually eligible under both Medicare and Medicaid. In order to collect for the services it provided these patients, Med-Center had to make coverage determinations and bill the appropriate agency – either Medicare or Medicaid. To understand the interplay between these two entities, a brief recitation of the programs and their workings in this regard is necessary.

**1.       The Medicare Program**

The Medicare program is regulated by Title XVIII of the Social Security Act and provides insurance coverage to qualified beneficiaries of certain medical expenses, including home health benefits. 42 U.S.C. §§ 1395 - 1395ggg, SSA § 1815-1896. Benefits for home health care are provided under Part A and Part B of the Medicare program, and are also delivered under Medicare Part C, through managed care entities approved by the Secretary of Health and Human Services (the "Secretary"). 42 U.S.C. §§ 1395w-21 - 1395w-28, SSA 1851-1859. As part of the Medicare program, Congress delegated to the Secretary the authority to promulgate any regulations that may be necessary to carry out the administration of the program. These regulations have the force of law and are binding on the providers of home health care services, the Department of Health and Human Services (the "Department"), and all fiscal intermediaries

and carriers.  42 U.S.C. § 1395hh, SSA § 1871.

Medicare will cover skilled nursing care, physical therapy, speech language pathology, occupational therapy, home health aide services, medical social services, durable medical equipment, medical supplies, and intern and resident services provided under certain approval hospital teaching programs.  42 U.S.C. § 1395x(m); 42 C.F.R. §§ 409.44 - 409.45.  A beneficiary qualifies for Medicare coverage of home health services if he or she meets each of the following requirements: (1) be confined to the home; (2) be under the care of a physician; (3) be in need of skilled services on an intermittent or part-time basis; (4) be under a physician's plan of care; and (5) the services must be provided by or under arrangements made by a certified home health agency.  42 U.S.C. § 1395f(a)(2)(C); 42 C.F.R. §§ 409.42 - 409.43.  Medicaid covers patients with chronic conditions.

### 2.     The Medicaid Program

The Medicaid program is a joint federal-state arrangement authorized by Title XIX of the Social Security Act, 42 U.S.C. § 1396-1396v (the "Medicaid Act").  A state's decision to participate in the Medicaid program is voluntary, yet once a state decides to participate in the program, it is obligated to comply with the Act and regulations promulgated by the Secretary of HHS.  42 U.S.C. § 1396a; New York v. Shalala, 119 F.3d 175, 177 (2d Cir. 1997).  Connecticut participates in the Medicaid program and its Department of Social Services is the single State agency responsible for monitoring the program.  To quality for federal Medicaid funds, a state must submit a "plan for medical assistance" (the "State Plan") to HCFA.  As a participant in the Medicaid program, a state plan must contain a detailed and comprehensive description of Connecticut's Medicaid program.  Once the state plan is approved by the Secretary, State Medicaid programs become entitled to receive matching funds from the federal government for a portion of its payments to providers and suppliers for furnishing assistance to Medicaid

recipients.  42 U.S.C. § 1396b(a).

Because Medicaid is the payor of last resort, the state plan must also contain the procedures for identifying third party liability procedures.  42 U.S.C. § 1396a(a)(25).  A third party is defined as "any individual, entity or program that is or may be liable to pay all or part of the expenditures for medical assistance furnished under a State plan."  42 C.F.R. § 433.136(3).  Liable third parties are those entities that offer full or partial payments for services in the state plan.  The Medicare program can be a liable third party.

### 3.    The Medicare Maximization Project

In this case, Connecticut contracted with the Center for Medicare Advocacy, Inc. ("CMA") to conduct a Medicare Maximization or Third Party Liability ("TPL") project and implement "pay and chase" to look for possible liable third parties.  The purpose of the TPL project was to identify claims paid by Medicaid that CMA (or the State) believed might be covered by Medicare, (i.e., as a liable third party) and to cause those claims to be submitted to Medicare for coverage determinations and payment where appropriate.  Additionally, pursuant to the TPL project, Connecticut unilaterally recouped Medicaid reimbursements already paid if it believed that a third party was in fact liable for such payment.  This caused providers such as Med-Center to submit claims to Medicare for coverage determinations – without regard to Medicare coverage requirements – or be subject to State recoupments.

### C    The Undisputed Factual Record Involving Med-Center's Claims

For the period of the claims at issue (October 1, 1988 through September 30, 1997), Med-Center was a certified home health agency with a provider agreement with Medicare.  This enabled it to provide services to Medicare beneficiaries and receive reimbursement for those services.  Med-Center also had a valid provider agreement with the Commissioner of the Connecticut Department of Social Services to provide home health services to eligible Medicaid

recipients.  (See Amended Intervenor Complaint ¶ 11).

As such, Med-Center provided home health services to duly eligible persons and made the mandated initial coverage decisions -- i.e., it decided which payor to submit a claim to for reimbursement based on the clinical status of the patient and the coverage requirements of the various payor sources.  Specifically, Med-Center, like other providers similarly situated, determined that many of the services rendered to dual eligibles were not covered by Medicare because, for example, the patient was not homebound, or a skilled service was not provided on a part-time or intermittent basis.  In these cases, Med-Center submitted the claims to Connecticut for Medicaid reimbursement.  The State processed these claims and reimbursed Med-Center. Claims where Medicare payment was indicated were sent to the fiscal intermediaries.

Years after the services were provided, billed and paid, Connecticut unilaterally initiated a review of claims pursuant to the TPL Medicare Maximization project.  (See Amended Intervenors Complaint, Exhibit 5). (See Wynn Aff., Exhibit F). [6]  Despite the admitted absence of a waiver to engage in "pay and chase", the Federal Defendants allowed the TPL project to flourish.  This practice violates 42 C.F.R. §§ 433.138; 433.139(e).

Under the first phase of the TPL project, Med-Center, like others similarly situated, was notified that CMA would be identifying claims with service dates from October 1, 1991 through September 30, 1992, and that these claims had to be submitted to their Medicare fiscal intermediaries in a Medicare bill format.  As noted in the Fanning affidavit, claims must be submitted to Medicare fiscal intermediaries within two years from the date of service as set forth in 42 C.F.R. 424.44(a)(1)(2).  (See Wynn Aff. Exhibit B).  Because the time limits of 42 C.F.R. 424.44(a)(1)(2) had lapsed for many of the home health claims previously paid by Medicaid,

CMA filed Notices of Intent to File Claims, pursuant to 42 C.F.R. § 424.45, with the fiscal intermediaries. These Notices purported to extend the time period to file claims by six months if certain requirements were met. (See 42 C.F.R. 424.45; Amended Intervenors Complaint ¶ 30.).

From 1994 to 1997, subsequent Notices of Intent were filed by CMA with the fiscal intermediaries for the periods October 1, 1988 through September 30, 1997. (See Amended Intervenors Complaint ¶ 95).[7] Thus, four years later in 1994 to 1995, Med-Center was asked to submit claims for 1988 to 1989 to their Medicare fiscal intermediaries. Since Medicare claims are reimbursed on a per visit basis whereas Medicaid claims are reimbursed on a per hour basis, Med-Center had to engage in the laborious and complex task of converting the previously filed and paid Medicaid claims to Medicare bill format and creating new bills.[8]

After receiving the Notices of Intent to File Claims from CMA, the fiscal intermediaries issued to Med-Center "Medical Review Information Requests," which sought information pertaining to each of the claims identified by CMA in the Notice of Intent to File Claims. (See Amended Intervenor Complaint, Exhibit 6). These Medical Review Information Requests demanded that Med-Center submit claims information to the fiscal intermediaries within a six

---

[6] Connecticut contracted with CMA to implement the TPL project. Pursuant to the contract between Connecticut and CMA, CMA was compensated $400 for each home health claim that CMA identified as allegedly subject to reimbursement by a liable third party. Id.

[7] Every year or two the home health agencies were given a list of every dual eligible patient for which Medicaid reimbursement had been paid for periods October 1, 1992 to September 30, 1993; October 1, 1988 to September 30, 1989; October 1, 1989 to September 30, 1990; October 1, 1990 to September 30, 1991; October 1, 1993 to September 30, 1994; October 1, 1994 to September 30, 1995; October 1, 1991 to September 30, 1996; and October 1, 1996 to September 20, 1997.

[8] Federal regulations require a claim for home health services to include a claim on a UB92 form or a HCFA-1450-Uniform Institutional Provider Bill filed with the appropriate intermediary in accordance with HCFA instructions. The claim must be signed by the beneficiary or the beneficiary's representative. See 42 C.F.R. 424.32. This was no small task for Med-Center. Med-Center had to create new bills for Medicare by converting hourly units to visit units. This process involved locating the medical records and reviewing the clinical documentation, time sheets and payroll records of all the home health disciplines that provided services to each patient, for example nurses, home health aides, therapists, and social workers. Once the number and type of visits to be billed to Medicare were determined, Med-Center had to apply its rates for the various types of visits for the applicable time period. The details describing this intensive process were set forth in the summary statement incorporated by reference to the Fanning Aff. attached to the Wynn Aff. as Exhibit B.

month time period.[9] (See Amended Intervenor Complaint, Exhibit 6).

As documented in the Record at 0002, and further described in the Fanning affidavit, Med-Center submitted the information requested by the fiscal intermediaries for claims requested by the TPL project within the six month time period.  Med-Center submitted approximately 90% of the claims requested.  The fiscal intermediaries reviewed these claims and made determinations as to whether Medicare coverage requirements were met.

Despite Med-Center's effort, a small subset of its claims were not filed on time and no Medicare coverage determinations were made.  For these claims, which were submitted after the fiscal intermediaries' six-month deadline, the fiscal intermediaries refused to make a determination as to whether the claims were covered by Medicare.[10]  Instead, the fiscal intermediaries issued Time Reject Notices, which declined to make Medicare coverage decisions and failed to notify Med-Center of its appeal rights.  (See, e.g., Amended Intervenors Complaint, Exhibit 7).  Without a determination of a liable third party for the contested claims, i.e., Medicare or any other payor source, Connecticut began recouping monies which were duly owed and paid to Med-Center.  Med-Center has been forced to return approximately $90,000 paid to it from Connecticut, and the State has demanded $290,000 in recoupments.

**D    Appeal of the Time Reject Notices and Judge Zwecker's Remand Decisions**

At the same time, Med-Center sought administrative appeals of the Time Reject Notices.  Specifically, it requested administrative hearings on the Time Reject Notices pursuant to 42 C.F.R. §§ 405.701 - 405.753.  The claims led to proceedings before Administrative Law Judge Bruce H. Zwecker, who issued **37** separate but substantially similar decisions.  A representative sample of the ALJ decisions are part of the Record at 00061-00090.

---

[9]  This practice constitutes "pay and chase" and is not permissible under federal law in the absence of a written HCFA/CMS waiver.

In the 37 decisions, ALJ Zwecker remanded the claims to the fiscal intermediaries for review and a decision on Medicare coverage and reimbursement.  Id.  In his opinions, Judge Zwecker stated that

> "The intermediary's 'time limit reject' notice did not state its reason for finding that the beneficiary could not be charged for the services at issue.  However, a determination that the provider cannot charge the beneficiary for the services implies the findings described above.  Incidentally, if the Administrative Law Judge were to make a hearing decision that did not state its reasons for deciding an issue against any party, the Medicare Appeals Council would use that fact alone as a reason to remand the case for a new hearing.  When an adjudicative body does not state the reasons for determinations, another body charged with reviewing the correctness of the determination has no reasonable basis to decide whether the determination was correct.
>
> Since the determination that the provider could not charge the beneficiary for the services at issue was an initial determination, as defined in Health Care Financing Administration regulation 42 CFR § 405.704(c), the provider has a right to request a reconsideration under the provisions of Health Care Financing Administration regulations 42 CFR §§ 405.710 and 405.712.  Although a party to an initial determination is expected to file a request for reconsideration within 60 days after the date of the notice of the initial determination, the notice of initial determination was defective in this case because it did not identify the determination that the provider could not charge the beneficiary for the services at issue as an initial determination and did not inform the appellant of his right to request reconsideration..." Id.

Judge Zwecker treated the Med-Center's request for a hearing as a request for reconsideration because of the faulty notice, stating:

> "Although the request for hearing (which shall be treated as a request for reconsideration) was not filed within 60 days after the date of the notice of the initial determination, the defects in the notice of the initial determination provide the appellant with good cause for not filing a request for reconsideration within the 60 day time period." Id.

---

[10] These claims are now the subject of this litigation.

Judge Zwecker then held that "[t]he matter is remanded to the intermediary, which shall treat the request for hearing as a request for reconsideration, **with good cause existing for its untimely filing.**" (Notice of Dismissal and Remand to Med-Center from Bruce H. Zwecker) (emphasis added). Judge Zwecker's decisions became the final decision of the Secretary of Health and Human Services when HCFA (now CMS) did not appeal the decisions within 60 days. See 42 C.F.R. § 405.717.[11]

It is these decisions that are at issue on summary judgment. Med-Center seeks to enforce the seemingly clear and unambiguous intent of ALJ Zwecker – i.e., remand and process the 37 claims. It seeks an order of mandamus. See 28 U.S.C. § 1361 (2004) (mandamus proper to compel agency to perform a duty owed to plaintiff); see also infra, Part II.E.[12]

### E    The Record Establishes that the ALJ Ordered the Fiscal Intermediaries to Make Coverage Determinations

Summary judgment must be granted in favor of Med-Center for two primary reasons: (1) the clear intent of the ALJ decisions is for remand of the claims to the fiscal intermediaries for processing and Medicare coverage determinations; and (2) the contemporaneous record indicates that the parties acted consistently with that direction. Nonetheless, the Federal Defendants continue to ignore the express direction to remand and process the claims, and now argue that Med-Center seeks to "review" the merits of the ALJ decisions, contending that the decisions were "dismissals." As noted above, however, the decisions make clear that the ALJ "remanded

---

[11] To the extent this Court looks for evidence of the ALJ's intent, the July 7, 1997 letter from Ms. Trionfini, counsel to Med-Center, to ALJ Zwecker may be instructive. While the Federal Defendants argued that the time restrictions should be strictly adhered to (Record at 5-6), Ms. Trionfini detailed for the ALJ that the claim submission process to the federal fiscal intermediaries was violative of federal law and that the submission of claims resulting in the Time Reject Notices was improper in the first place: "A denial would have allowed utilization of the available appeal process and appropriate documentation could have been reviewed upon appeal. There is no statutory or regulatory basis for a "time limit reject" which simply denied due process to the provider." (Record at 0008).

[12] The Federal Defendants maintain that the ALJ "dismissed" the claims. They further contend that the providers failed to appeal ALJ Zwecker's decision and cannot now seek "review" of those decisions. Med-Center submits that the Federal Defendants' assertion is erroneous and distorts both the ALJ decisions and the context in which they

to the intermediaries" to "treat the request for hearing as a request for reconsideration' because "good cause" existed for the untimely filings. (See sample decision and Attachment 8 to the Amended Intervenor Complaint and Complaint ¶102, Answer ¶102).

1.    **The ALJ Decisions Facially and Unequivocally Demonstrate that the Federal Defendants Must be Process the Claims**

ALJ Zwecker issued numerous substantially similar decisions for the claims submitted that were subject to the Time Reject Notices. Each of these decisions remanded the matter to the fiscal intermediaries and ordered them to issue a reconsidered determination despite the six months deadline. In the Decision and Order, ALJ Zwecker made several key findings. First, he determined that under 42 C.F.R. § 405.720, a provider is entitled to a hearing (before an ALJ) only after the initial determination rendered by the fiscal intermediary has been reconsidered. He found that no such reconsideration had in fact been issued by the fiscal intermediaries, and therefore determined that Med-Center could not have a hearing under the regulations. Second, ALJ Zwecker determined that:

> The unusual circumstances which prompted [Med-Center] to file a request for a hearing require the Administrative Law Judge to take further action to prevent [Med-Center] from being denied due process. That further action is to remand this case back to the intermediary with instructions to treat [Med-Center] request for a hearing as a request for reconsideration determination so that [Med-Center] will not be denied the opportunity to exercise its right to use the administrative appeals process.

(See Amended Intervenor Complaint, Exhibit 8).

The third pertinent finding of ALJ Zwecker was that the Time Reject Notice issued to Med-Center was an initial determination, pursuant to 42 C.F.R. § 405.704, and that such "notice of initial determination was defective" because it "did not identify the determination that the

---

were rendered. The ALJ decisions were favorable to Med-Center because they directed CMS to process the claims and make a Medicaid coverage decision.

provider could not charge the beneficiary for the services at issue... and did not inform the [Med-Center] of his right to request reconsideration.  (See Amended Intervenor Complaint, Exhibit 8; Wynn Aff., Exhibit G).  Finally, the ALJ noted that although the regulations require that a request for a reconsidered determination be filed within 60 days from the date of receipt of the initial determination, he found that the defective notice of initial determination issued by the fiscal intermediary provided Med-Center with good cause for not filing a request for reconsideration within the 60-day period:

> Although the request for hearing (which shall be treated as a request for reconsideration) was not filed within 60 days after the date of the notice of the initial determination, the defects in the notice of initial determination provide [Med-Center] with good cause for not filing a request for reconsideration within the 60 day time period.

(See Amended Intervenor Complaint, Exhibit 3; see also Wynn Aff., Exhibit G).

Based on these express findings, the ALJ concluded that since he could not conduct a hearing to determine whether the fiscal intermediary had made a proper coverage determination, he would remand the claims back to the fiscal intermediaries to reconsider the initial coverage determination, so that Med-Center could proceed through the administrative review process. (See Amended Intervenor Complaint, Exhibit 8; Wynn Aff. Exhibit G).

### 2.    The Contemporaneous Conduct of the Federal Defendants Indicates they Understood the ALJ's Decisions as a Remand to Issue Reconsidered Determinations

Notwithstanding the ALJ's clear and express orders remanding the matters back to the fiscal intermediaries to issue reconsidered determinations, the Federal Defendants refused to comply with those decisions.  On September 26, 1997, Paul Duplinsky, Manager of Administration of Medicaid Review and Appeals of HCFA sent a letter to ALJ Zwecker rejecting the ALJ's findings and order to issue reconsidered determinations.  This letter stated in

part,

> In reference to your late August dismissal and instruction to
> perform a reconsideration on these cases, since we have not made a
> decision concerning the coverage of any services, we have no basis
> for conducting a reconsideration. Because we did not receive a
> claim, we have not actually issued an Initial Determination. Under
> section 405.704(c) of 42 Code of Federal Regulations, an Initial
> Determination must be made on the basis of a request for payment
> filed by the provider. Our decision and notice were based solely
> on the fact that we had not received a request for payment within
> the prescribed time limits.

(See Wynn Aff., Exhibit E). This letter is only consistent with Med-Center's interpretation of

the ALJ decisions. (See Record at 0029; see also Record at 0030 (letter from HHS to Med-

Center, in which the Federal Defendants acknowledge ALJ Zwecker's direction to reconsider the

claims, but reject his opinions). Had the Federal Defendants understood the decision as a

dismissal, this letter would not have been sent. On its face, HCFA disagreed with ALJ

Zwecker's conclusion, and, in particular his finding that the Time Reject Notices constituted

Initial Determinations by the fiscal intermediaries and that Med-Center was entitled to

reconsidered determinations which it requested by way of the request for a hearing. Because

HCFA categorically disagreed with the ALJ, it wrote to him to object. However, an agency may

not simply ignore an order it does not like. Here HCFA (now CMS) refused to comply with the

decisions to make reconsidered determinations and later did not appeal them. The ALJ decisions

became final when the Federal Defendants failed to appeal them within the 60 day time period.

In summary, Med-Center is entitled to relief under the second count.

Based upon the foregoing, Med-Center is entitled to an order of mandamus to enforce the

decision. Where a party is aggrieved by a government agency's failure to follow the orders of an

ALJ, mandamus is the appropriate remedy. Guy v. Sullivan, 736 F. Supp. 1255 (W.D.N.Y.

1990) (granting mandamus to compel HHS Secretary to follow orders of ALJ decision). Med-

Center's motion for summary judgment therefore seeks to compel the Federal Defendants'

compliance with the ALJ orders; it does not seek a review of those orders as the Federal

Defendants previously suggested. Indeed, as ALJ Zwecker himself noted in a companion

decision to the numerous Med-Center remand decisions:

> The position statement of the appellant's attorney indicates that the
> Health Care Financing Administration has ignored the findings of
> the Administrative Law Judge in those earlier cases. If the Health
> Care Financing Administration does not agree with the findings of
> an order of an Administrative Law Judge, its remedy is to appeal
> the order to the Medicare Appeals Council, otherwise known as the
> Departmental Appeals Board of the Department of Health and
> Human Services. *An Administrative Law Judge of the Social
> Security Administration does not have the power to force the
> Health Care Financing Administration to follow its own rules and
> to respect basic principals of due process. A United States District
> Court would have such power*, and assuming the requirements of
> Equal Access to Justice Act were met, the court could even compel
> the Health Care Financing Administration to pay the appellant's
> attorney for the value of his services.

(Notice of Dismissal and Remand to Middlesex Hospital Home Health Inc., from Judge Bruce H.

Zwecker) (emphasis added).   This is a further indication that ALJ Zwecker was finding in favor

of Med-Center and remanding the claim to the fiscal intermediaries.

### 3.   The Federal Defendants' Remedy Was to Appeal – Not Ignore – the ALJ Decisions

Under 42 C.F.R. § 405.724, a party seeking review of an ALJ decision must request an

appeal within 60 days of receipt of the decision at issue. This is the only available recourse to

the Federal Defendants objection to the ALJ's decisions and orders. It is clear from Mr.

Duplinsky's September 26, 1997 letter that the Federal Defendants relied on § 405.704(c) to

reject the ALJ's findings, but ignored § 405.724 which requires them to properly challenge the

decisions through the appeals process. The Federal Defendants may not simply pick and choose

those sections of the regulations they will follow and ignore the remaining regulatory requirements. "Once an agency exercises its discretion and creates the procedural rules under which it desires to have its actions judged, it denies itself the right to violate these rules. If an agency in its proceedings violates its rules and prejudice results, any action taken as a result of the proceedings cannot stand." Howard v. Heckler, 661 F. Supp. 654 (N.D. Ill. 1986) (quoting Black v. Interstate Commerce Comm'n, 737 F.2d 643, 652 n.3 (7th Cir. 1984)).

The Federal Defendants cannot seriously argue that they are not bound by Judge Zwecker's order. Administrative hearings before an ALJ are expressly provided for in the regulations, (42 C.F.R. § 405.717, 20 C.F.R. § 404.929, and 20 C.F.R. § 404.930). The regulations specifically provide for an appeals process of an ALJ decision to be utilized if **any** party to an ALJ hearing subject to an ALJ decision is dissatisfied with that decision. See 42 C.F.R. § 405.724; 20 C.F.R. § 404.967, which states, "[i]f you or **any other party** is dissatisfied with the hearing decision or with the dismissal of a hearing request, you may request that the Appeals Council review that action." (emphasis added). The Federal Defendants, which, if dissatisfied with Judge Zwecker's orders remanding to make reconsidered determinations, were obligated to proceed through the administrative review process, pursuant to 20 C.F.R. § 404.967 and 42 C.F.R. § 405.724.

The Federal Defendants have also previously argued that ALJ Zwecker did not remand to the fiscal intermediaries to make coverage determinations, but only to issue a reconsidered determination if the beneficiary could be charged for the services. (See Def. Mem. in Supp. S.J. dated Apr. 26, 2002, at 7). This argument is illogical. Before an ALJ can make a determination of whether a beneficiary is liable for services received and billed to Medicare, the ALJ must first decide whether the services were covered by Medicare. If the services are covered by Medicare,

Medicare pays. If the services are not covered by Medicare, the ALJ must decide whether the beneficiary is liable or whether that liability should be waived pursuant to 42 U.S.C. § 1395pp; Social Security Act §1879 entitled "Limitation on Liability of Beneficiary Where Medicare Claims Are Disallowed."[13]

Because the Federal Defendants' reading of the ALJ decision clearly is at odds with that of Med-Center's, the meaning of the ALJ decision is a matter for judicial interpretation for this Court. This Court should conclude, consistent with the holdings by Judge Zwecker, that the ALJ directed the fiscal intermediaries to make coverage determinations --there was simply no other purpose for the remand. Based upon the decisions themselves, Count II is a proper case of mandamus directing the fiscal intermediary to act upon the decisions and process all claims subject to the Time Reject Notices. Summary judgment for Med-Center is warranted.

## IV.    DECLARATORY JUDGMENT CLAIM

Count III states a claim for relief for a declaratory judgment, and summary judgment should be granted in favor of Med-Center.

### A    Med-Center Has A Present Controversy Against the Federal Defendants

The Amended Intervenor Complaint demonstrates an actual controversy directed to the Federal Defendants. At issue is Med-Center's need for a declaration as to whether the Federal Defendants must process the claims that resulted in Time Reject Notices. "Where there is a substantial controversy between the parties having adverse legal interests of sufficient immediacy, a case is ripe for declaratory relief." City of New York v. United States Dep't of Commerce, 739 F. Supp. 761, 767 (S.D.N.Y. 1990).

---

[13] Even assuming arguendo for purposes of this memorandum of law only, that the Federal Defendants' reading of ALJ Zwecker's opinion is correct, and the remand order was limited to determining whether a beneficiary could be charged for those services, the fiscal intermediaries were still directed by ALJ Zwecker to issue reconsidered determinations (however narrow in scope), and they still failed to comply with this order.

An actual case and controversy is manifest from the Amended Intervenor Complaint against the Federal Defendants. In fact, the only conceivable way this Court could conceivably find no controversy exists would be if it found that there is no need to interpret the ALJ decisions because the claims should not have been submitted to Medicare in the first place. But even under this scenario, which Med-Center views to be a correct interpretation of federal law, Med-Center would still seek a declaration against the Federal Defendants that Medicare is not required to make further coverage determinations.

This Court twice found there to be an actual existing conflict involving Med-Center, i.e., its interests were not coterminous with the Federal Defendants. This holding occurred initially on the Motion to Intervene when the Court concluded the interests of the plaintiffs-intervenors (including Med-Center) were not protected by the Federal Defendants, and on September 24, 2002, when the Court denied the motion to re-align the parties. See Decision at page 7.

The Federal Defendants previously cited a series of cases in support of their motion for summary judgment and their position that declaratory relief is not available here. See e.g., Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667 (1950); Warner-Jenkinson Co. v. Allied Chem. Corp., 567 F.2d 184 (2d Cir. 1977); Greater N.Y. Hosp. Ass'n v. United States, No. 98 Civ. 2741, 1999 WL 1021561, at *1 (S.D.N.Y. Nov. 9, 1999) (citing Thomas v. City of New York, 143 F.3d 31 (2d Cir. 1998). However, these cases are not probative of the issue before the Court. Indeed, the cases only stand for the general proposition that there needs to be a separate basis for jurisdiction apart from a declaration of rights and the dispute must be actual, not theoretical in nature. See Skelly Oil, supra (Declaratory Judgment Act allowed the Court to issue relief even if no enforcement was possible at that time, but it did not "enlarge" federal court jurisdiction: Warner-Jenkinson Co., supra (Declaratory Judgment Act did not enlarge

jurisdiction, but Court could entertain claim if there is jurisdiction and case and controversy exists); Greater N.Y. Hosp. Ass'n, supra (suits based on future or conditional events are not suited for declaratory judgment).  None of these cases refutes the existence of Federal court jurisdiction or the existence of the actual case and controversy discussed above.

**B**      **The Court Should Declare that the Federal Defendants are in Violation of Federal Law by Allowing States to "Pay and Chase" Provider Claims Without a Waiver**

There is no dispute that the Federal Defendants never provided Connecticut with a waiver that would permit it to engage in the type of "pay and chase" recoupments at issue here. Nonetheless, the Federal Defendants condoned Connecticut's direction to Med-Center to submit belated claim submissions to Medicare as part of its TPL project.  Accordingly, Med-Center is entitled to a declaration that the Federal Defendants are in violation of federal law: first by not processing the claims as ordered by the ALJ, and second by permitting states to direct providers such as Med-Center to submit belated claim submissions -- without providing the Connecticut Medicaid program a waiver -- the Federal Defendants abdicated its duty to oversee the state Medicaid program and violated federal law.  See 42 C.F.R. §§ 433.138; 433.139(e).  This claim is particularly striking in that it highlights the fact that the Federal Defendants have completely reversed their legal position.  At the time this action began, the Federal Defendants stood behind the regulations at 42 C.F.R. §§ 433.135 to 433.154 (federal regulations on Third Party Liability), as well as HCFA Program Memorandum AB-99-88 (Amended Intervenor Complaint, Exhibit 1) and the HCFA State Director letter dated Nov. 19, 1996 (Id. at Exhibit 2), which reiterate the regulatory requirements that claims should not be submitted to the federal fiscal intermediaries pursuant to "pay and chase".

**C**    **Med-Center is Entitled to a Declaration as to Whether the Claims at Issue Must be Processed**

Med-Center is neither asking the Federal Defendants to make a conclusive finding that Medicare is the liable third party nor to review the ALJ decisions. Rather Med-Center seeks a declaration that the Federal Defendants must **process** the claims subject to the Time Reject Notices, as the fiscal intermediary was directed to do, or declare that they need not be processed. The absence of a coverage determination one way or another prevents closure of the claims encompassed by the ALJ decisions. If the Court declares that the Federal Defendants should process the claims, then Med-Center will get the coverage determination it needs to prevent the recoupments at issue. If the Court declares that no coverage determinations need to be made at all, because the claims should not have been submitted to Medicare in the first instance, then Med-Center was correct in its coverage decsision to have billed Medicaid initially.

Moreover, if this Court declares that the Federal Defendants violated 42 C.F.R. §§ 433.138, 433.139 by permitting "pay and chase" without a waiver, the entire scheme resulting in the ALJ decisions and Time Reject Notices would be unlawful. In that event, this Court should conclude that Med-Center need not be compelled to submit the claims, and that the ALJ decisions are therefore irrelevant. Damages should be assessed due to the Federal Defendants' violation of the law. However, if the Court declares that there was no violation of federal law, mandamus to the ALJ decisions is required so that the Federal Defendants process the claims and a coverage determination is made.

## **CONCLUSION**

For the foregoing reasons, Med-Center's motion for summary judgment must be granted.

There are no defenses, factual or legal to the Amended Intervenor Complaint.


December 22, 2004

                                        Respectfully submitted,


                                        _____
                                        Connie A. Raffa, admitted *pro hac vice*
                                        David N. Wynn, admitted *pro hac vice*
                                        Eric S. Lent, admitted in New York only
                                        Attorneys for plaintiff-intervenor Med-
                                        Center Home Health Care Agency, Inc.
                                        Arent Fox PLLC
                                        1675 Broadway
                                        New York, New York 10019
                                        (212) 484-3900