IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| PATRICIA WILSON-COKER, <br> Commissioner of Social Services, *et al.*, <br> <br> Plaintiffs, <br> <br> COMMUNITY VISITING NURSE AND HOME <br> CARE AGENCY, INC; MED-CENTER HOME <br> HEALTH CARE, INC; PRIORITY CARE, INC; <br> STAFF BUILDERS HOME HEALTH CARE, <br> INC., and OTHER SIMILARLY SITUATED <br> HOME HEALTH AGENCIES, <br> <br> Plaintiff-Intervenors, <br> <br> v. <br> <br> MIKE LEAVITT, Secretary, United <br> States Department of Health and Human Services, <br> *et al.*,[1] <br> <br> Defendants, and <br> <br> ASSOCIATED HOSPITAL SERVICE; and <br> UNITED GOVERNMENT SERVICES, INC., <br> <br> Additional Defendants. | Civil Action No. 3:00CV1312 (CFD) <br> <br> January 28, 2005 |

## OPPOSITION TO PLAINTIFF-INTERVENOR'S MOTION
## FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

Plaintiff-intervenor Med-Center Home Health Care, Inc.'s ("plaintiff-intervenor" or

"Med-Center") motion for summary judgment should be denied for the same reasons that

defendants' motion should be granted.  Plaintiff-intervenor indisputably missed the Medicare

---

[1]     Pursuant to Fed. R. Civ. P. 25(d), Mike Leavitt, in his official capacity as
Secretary of Health and Human Services, substitutes for Tommy Thompson.

filing deadline for the claims that are issue in this case, and nothing in the ALJ decisions on which it relies provides that it was excused from those deadlines. Instead, those decisions concluded that the ALJ lacked jurisdiction over plaintiff-intervenor's requests for hearing and, in <u>dicta</u>, asserted that defendants should permit plaintiff-intervenor to seek reconsideration of the notices that the claims were time-barred, even though the 60-day deadline for seeking reconsideration had passed. There is no other way to read the decisions.

Plaintiff-intervenor's requests for declaratory relief are restatements of its claim that the ALJ ordered defendants to make substantive coverage determinations for claims that plaintiff-intervenor admits were untimely and that the record establishes were never filed at all. Because plaintiff-intervenor has failed to state a claim as to its assertion that it is entitled to Medicare coverage determinations, the Court lacks jurisdiction over plaintiff-intervenor's claim for declaratory judgment.

The one requested declaration that is not a restatement of its claim related to the ALJ decisions – a request for a declaration that defendants are in violation of the law for purportedly failing to prevent the State of Connecticut from "paying and chasing" in violation of 42 C.F.R. § 433.139 – fails for a variety of other reasons as well. The Court lacks jurisdiction over this claim because (1) plaintiff-intervenor has failed to exhaust administrative remedies, and (2) the requested relief would not redress any injury to plaintiff-intervenor attributable to defendants because even if the Court issued the requested declaration, plaintiff-intervenor's claims would still be untimely, and it would not be entitled to Medicare reimbursement. In addition, even if Connecticut were in violation of the law, any decision by the Secretary of HHS whether to institute sanctions against Connecticut for its purported violations was and is an unreviewable

2

exercise of agency discretion. Plaintiff-intervenor has also offered no facts to support its contention that Connecticut is in violation of its State plan, let alone that defendants have violated the law by failing to prevent such a violation.[2]

**ARGUMENT**

## I.     THE ALJ DECISIONS DO NOT ENTITLE PLAINTIFF-INTERVENOR TO "COVERAGE DETERMINATIONS"

The ALJ decisions at issue contain the following reasoning:  (1) the ALJ had no authority to review the fiscal intermediary's Time Limit Reject notices because no reconsideration had been conducted, Sample of Orders of Dismissal and Remand (submitted with Administrative Record on December 16, 2004) HHS 0063, 0069, 0075, 0081, 0087; (2) the provider "therefore [did] not have a right to a hearing" and the "provider's request for a hearing [was] dismissed," id.;[3] (3)  the last line of the Time Limit Reject notices states that the "beneficiary may not be charged for any related services" but did not provide a basis for this conclusion, id. at HHS 0064-65, 0070-71, 0076-77, 0082-83, 0088-89; (4) the decision that the beneficiary could not be charged was an appealable initial determination, id. at HHS 0065, 0071, 0077, 0083, 0089; (5) the purported "notice of initial determination" did not inform the provider of the right to reconsideration if dissatisfied, id. at HHS 0065, 0071, 0077, 0083, 0089; (6) the failure to inform the provider of the right to reconsideration gave the provider good cause for failing to file a

---

[2]     Defendants incorporate the Statutory and Regulatory Background and the Factual Background and Procedural History sections from defendants' previously submitted Memorandum in Support of Defendants' Motion for Summary Judgment ("Def. Mem.") at 4-10.

[3]     Everything else that follows in the ALJ's opinion is dicta and without binding effect, and as explained in defendants' previously filed motion to dismiss for lack of jurisdiction, there is accordingly no basis for the assertion of jurisdiction in this case. See Motion to Dismiss and Memorandum in Support Thereof (Docket Number 92).

request for reconsideration within the required 60 days.  Id. at HHS 0065-66, 0071-72, 0077-78, 0083-84, 0089-90.  Based on this reasoning, in addition to dismissing the request for hearing, the ALJ purported to "remand" the matter to the intermediary with instructions to treat the request for an ALJ hearing as a request for reconsideration "with good cause existing for its untimely filing."  Id. at HHS 0066, 0078, 0084, 0090.

The ALJ accordingly purported to remand to allow plaintiff-intervenor to request reconsideration of the Time Limit Reject notices outside the required 60-day period, and specifically, the sentence in the notices stating that the beneficiary could not be charged.  Plaintiff-intervenor calls this conclusion "illogical" because

> [b]efore an ALJ can make a determination of whether a beneficiary is liable for services received and billed to Medicare, the ALJ must first decide whether the services were covered by Medicare.  If the services are covered by Medicare, Medicare pays.  If the services are not covered by Medicare, the ALJ must decide whether the beneficiary is liable or whether that liability should be waived . . . .

Plaintiff-Intervenor's Memorandum in Support of Motion for Summary Judgment ("Pl. Mem.") at 20-21.

As an initial matter, plaintiff-intervenor is incorrect when it states that "[b]efore an ALJ can make a determination of whether a beneficiary is liable for services received and billed to Medicare, the ALJ must first decide whether the services were covered by Medicare."  Pl. Mem. at 20.  To the contrary, the conclusion that the beneficiary could not be charged resulted inexorably from plaintiff-intervenor's failure to file timely claims.[4]  Thus, whether the services

---

[4]     See Health Care Financing Administration Program Memorandum, Transmittal A-99-52 (December 1999) (Attachment 1 to Memorandum in Support of Defendants' Motion for Summary Judgment) at 5 ("When a beneficiary requests that a claim be submitted to Medicare,

(continued...)

4

were "covered services" is irrelevant.  The beneficiary cannot be charged for them even if they would not have been covered, and the provider's own failure to file the claim timely makes it liable for the charges involved.

In any event, whatever label plaintiff-intervenor seeks to attach, defendants' interpretation is the correct one.  Indeed, it is not even an interpretation; it is the verbatim recitation of what the ALJ said.  See Sample Orders of Dismissal and Remand, HHS 0064, 0070, 0076, 0082, 0088 ("It was the last sentence of this notice that prompted the appellant to try to appeal the 'Time Limit Reject.'"); id. at HHS 0065, 0071, 0077, 0083, 0089 ("The intermediary's 'time limit reject' notice did not state its reason for finding that the beneficiary could not be charged for the services at issue.'"); id. ("Since the determination that the provider could not charge the beneficiary for the services at issue was an initial determination . . . the provider has a right to request a reconsideration . . . ."); id. ("The defects in the notice of the initial determination provide the appellant with good cause for not filing a request for reconsideration within the 60 day time period."); id. at HHS 0066, HHS 0078, 0084, 0090 ("The matter is remanded to the intermediary, which shall treat the request for hearing as a request for reconsideration with good cause existing for its untimely filing.").  It could not be more clear that the sole purpose of the

---

[4](...continued)

you must promptly submit a demand bill to Medicare.  If you fail to do so, you will be prohibited from charging the beneficiary or other third-party payers that might otherwise make payment on behalf of the beneficiary.") (emphasis added); Home Health Agency Manual, Chapter 2, Section 236, available at http://www.cms.hhs.gov/manuals/11_hha/hh235.asp ("Where the beneficiary request" for Medicare payment "was filed timely . . . but the provider is responsible for not filing a timely claim, the provider may not charge the beneficiary for the services . . . .") (emphasis added).  This policy results from the fact that a provider who fails to submit a timely claim prevents a coverage determination from occurring, and therefore must bear the presumption that the claim would have been covered if it had submitted a timely claim.

ALJ's "remand" was to allow plaintiff-intervenor to request reconsideration of the last sentence of the Time Limit Reject notices outside of the required 60-day period.[5]

By contrast, the ALJ does not question or address in any way the portion of the Time Limit Reject notices stating that plaintiff-intervenor could not recover from Medicare "because the time limit to submit a Medicare bill ha[d] expired." See Time Limit Reject Notice (Attachment 7 to Amended Intervenor Complaint); see also Sample of Time Limit Reject Notices, A.R. HHS 0035, 0041, 0048, 0051, 0054, 0057. It is undisputed that plaintiff-intervenor failed to file timely claims and indeed, the record establishes that it never filed these claims at all. See Section II, infra. The reference in the ALJ decisions to good cause existing for untimely filing, moreover, expressly refers to the 60-day period for filing a request for reconsideration of the Time Limit Reject notices, not the six-month extension of the Medicare filing deadline.[6] The

---

[5]    Plaintiff-intervenor states in a footnote that assuming that defendants' reading is correct, the fiscal intermediary did not conduct the narrow reconsideration ordered by the ALJ. See Pl. Mem. at 21 note 13. This assertion is, as an initial matter, irrelevant. As indicated by the fact that plaintiff-intervenor inserts this argument into a footnote, a narrow reconsideration of the Time Limit Reject notices is not the relief that plaintiff-intervenor has sought in this litigation. Plaintiff-intervenor instead requests an order that defendants make coverage determinations and process the claims at issue. See Amended Intervenor Complaint at ¶¶ 117, 120 (describing relief sought against defendants). In addition, even though defendants viewed the ALJ's remand language as dicta, and even though the Time Limit Reject notices were not initial determinations, CMS nonetheless conducted an informal reconsideration and concluded that there was no basis for reaching a different conclusion. See Letter from Peter C. Toland, Associate Regional Administrator, to Catherine E. Jordan, March 3, 1998, A.R. HHS 0031-32. Under the regulations, there was no basis for a formal reconsideration determination because the fiscal intermediary based its conclusions on the failure to file claims at all, not the conclusion that the items or services were excluded from coverage. Id.; see also Sample of Time Limit Reject Notices, A.R. HHS 0035, 0041, 0048, 0051, 0054, 0057. The finding that a claim is untimely is not an appealable initial determination. See 42 C.F.R. § 405.704(c).

[6]    Sample of Orders of Dismissal and Remand, HHS 0065, 0071, 0077, 0083, 0089 ("Although the request for hearing (which shall be treated as a request for reconsideration) was

(continued...)

ALJ decisions contain no discussion whatsoever of good cause for missing the six-month extension deadline for filing claims. Plaintiff-intervenor accordingly has and offers no basis, under the ALJ decisions or otherwise, for claiming that it is entitled to reimbursement from Medicare for services that would otherwise have been covered if it had filed timely claims.

Plaintiff-intervenor nevertheless asserts early in its memorandum that the ALJ found good cause for the late filing of the claims, and further asserts in a footnote that "ALJ Zwecker's good cause finding is predicated upon the complex nature of the process to convert Medicaid claims into Medicare claims." Pl. Mem. at 5 and note 4. These assertions are fanciful, and made without citation to the ALJ decisions. Plaintiff-intervenor fails to explain, inter alia, why the ALJ would be referring to good cause existing for failing to meet the 60-day deadline for filing a request for reconsideration if he meant to excuse plaintiff-intervenor from the six-month extension deadline for filing Medicare claims. Moreover, plaintiff-intervenor's memorandum later contradicts itself on this point by asserting that the ALJ found that Med-Center had "good cause for not filing a request for reconsideration within the 60-day period," not for failing to file claims within the six-month deadline that was the basis for the Time Limit Reject notices. Pl. Mem. at 17 (first emphasis in original, second emphasis added).

Plaintiff-intervenor also fails to point to any language in the ALJ decisions, let alone the regulations, that would have justified a finding of good cause for missing the deadline for filing

---

[6](...continued)
not filed within 60 days after the date of the notice of the initial determination, the defects in the notice of the initial determination provide the appellant with good cause for not filing a request for reconsideration within the 60 day time period"). As explained in defendants' motion for summary judgment, the filing of a statement of intent affords a provider an additional six months to submit a claim. See Memorandum in Support of Defendants' Motion for Summary Judgment at 6; see also Plaintiffs-Intervenors' Statement Pursuant to Local Rule 9(c)(1) ¶ 39.

Medicare claims. Plaintiff-intervenor's halfhearted, footnoted assertion that the ALJ found good cause because of the "complex nature of the process to convert Medicaid claims into Medicare claims" is made up out of whole cloth. Pl. Mem. at 5 note 4. The ALJ says nothing about this in his decisions, and the only citation offered for this proposition is an irrelevant affidavit from Med-Center's president – executed nearly five years after the ALJ decisions and submitted with plaintiff-intervenor's initial motion for summary judgment in this case – explaining why it did not file timely claims. Id. There is accordingly no basis for the conclusion that the ALJ ordered the fiscal intermediary to process claims to determine Medicare's liability notwithstanding plaintiff-intervenor's conceded failure to file timely claims. Instead, to the extent that the ALJ's opinion contains any order that is not dicta, it was an order to treat "the request for hearing as a request for reconsideration with good cause existing for its untimely filing." Sample of Orders of Dismissal and Remand, HHS 0066, 0078, 0084, 0090.

It is possible that the ALJ erroneously expected that such a request for reconsideration would have entailed an examination of whether the claims would have been covered by Medicare had they been timely filed. The expectation would have been based on the ALJ's mistaken belief that "a determination that the provider cannot charge the beneficiary for the services implies the findings" that the "items or services" at issue "are not covered by reason of § 411.15(g) or § 411.15(k)." Sample of Orders of Dismissal and Remand HHS 0064-65, 0070-71, 0076-77, 0082-83, 0088-89. Even if the ALJ misunderstood the basis for the FI's decision, however, the ALJ did not purport to order the FI to reach a particular result or address the request for

8

reconsideration using a particular method.[7]   Rather, the ALJ purported to require the intermediary to do nothing more than treat the request for hearing as a request for reconsideration with good cause existing for its untimely filing.  See Sample of Orders of Dismissal and Remand, HHS 0066, 0078, 0084, 0090 ("The matter is remanded to the intermediary, which shall treat the request for hearing as a request for reconsideration, with good cause existing for its untimely filing.")

Moreover, as the plain language of the opinion demonstrates, see supra at 4-5, the purpose of such an examination in the ALJ's mind would have been to evaluate the finding that the beneficiary could not be charged, not the determination that plaintiff-intervenor's Medicare claims were time-barred.  Thus, even if one viewed the ALJ's decision as more than dicta – and even if one viewed the ALJ, who had already concluded that he lacked jurisdiction over the appeal, to be making a merits determination that the FI had to address the request for reconsideration in a particular way or using a particular method, contrary to the plain language of the opinion – defendants would, under no circumstances, be entitled to Medicare reimbursement for any claims that would have been covered by Medicare if they had been filed on time.

---

[7]     Such an expectation, while unhelpful to plaintiff-intervenor's claim, does help to explain why the ALJ believed that a reconsideration determination could potentially have some effect, and thereby refutes plaintiff-intervenor's assertion that the plain meaning of the ALJ decisions is "illogical."  Pl. Mem. at 20.  The expectation that a reconsidered determination of the finding that the beneficiary could not be charged would entail a finding as to whether the services were covered also explains why the ALJ erroneously believed that the Time Limit Reject notices were initial determinations that could be appealed, and also explains why the fiscal intermediary, in the letter cited by plaintiff-intervenor at page 18 of its memorandum, felt it necessary to explain to the ALJ that the basis for the Time Limit Reject notices was the fact that the plaintiff-intervenor had never filed any claim, not a determination that the services would otherwise have been covered.

Nothing in the opinion even remotely suggests that the ALJ doubted the conclusion that the failure to satisfy the Medicare filing deadlines barred recovery from Medicare.[8]

Plaintiff-intervenor asserts that defendants' "remedy was to appeal – not ignore – the ALJ Decisions." Pl. Mem. at 19. But defendants did not "ignore" the ALJ decisions and had no reason – indeed, no ability – to appeal them because the ALJ concluded that he lacked jurisdiction over plaintiff-intervenor's requests for hearing. Moreover, the ALJ purported to remand only to have the FI treat the request for hearing as a request for reconsideration of the Time Limit Reject notices. Plaintiff-intervenor never sought such relief in this litigation, and defendants subsequently confirmed the accuracy of the Time Limit Reject notices by confirming that plaintiff-intervenor had failed to file the claims that were the subject of the notices. See note 5, supra.

## II.  PLAINTIFF-INTERVENOR'S MEMORANDUM INACCURATELY SUGGESTS THAT THE CLAIMS AT ISSUE WERE FILED AT SOME POINT EVEN IF FILED LATE

Throughout its memorandum, plaintiff-intervenor leaves the inaccurate impression that the claims at issue were submitted at some point even though it admits that they were submitted late.[9] Plaintiff-intervenor also represented in an earlier teleconference with the Court that CMS'

---

[8]     While plaintiff-intervenor slips in the sentence, "If the services are covered by Medicare, Medicare pays," Pl. Mem. at 20-21, it offers no basis in the regulations or the ALJ's decisions for the conclusion that it could be reimbursed for claims that it admits were not filed on time and indeed, were never filed at all.

[9]     See Pl. Mem. at 5 ("[a]n order is thus sought directing the Federal Defendants to accept and process all claims filed by Med-Center" (emphasis in original)); id. at 5 ("[t]hose decisions remanded the disputed provider claims"); id. at 13 ("[f]or these claims, which were submitted after the fiscal intermediaries' six-month deadline"); id. at 16 ("ALJ Zwecker issued numerous substantially similar decisions for the claims submitted").

proposed administrative record was deficient because it did not contain the medical records for the claims at issue.  Counsel for defendants explained that the medical records were not included because the medical records had never been submitted to the FI.

While plaintiff-intervenor's claims would still be time-barred even if the claims were submitted at some point because it indisputably missed the Medicare filing deadline, it is nonetheless worth emphasizing that, as demonstrated in defendants' memorandum in support of their motion for summary judgment, these claims were not only filed late; they were never filed at all.  See Letter from Sandra A. Trionfini to Hon. Bruce H. Zwecker, July 7, 1997, A.R. HHS 0007 (indicating that Med-Center had not provided the medical records necessary to process the claims); Letter from Paul D. Duplinsky to Bruce H. Zwecker, September 26, 1997, A.R. HHS 0016-17 (stating that the fiscal intermediary never received claims folders for the 37 beneficiaries at issue).  Plaintiff-intervenor's motion provides no evidence that plaintiff-intervenor has ever submitted these claims, and plaintiff-intervenor's statement of material facts also does not assert that the claims were ever filed.  The fact that the claims were never filed at all only highlights the absence of any merit to plaintiff's contention that the ALJ ordered, and the FI should have conducted, coverage determinations.  The FI could hardly conduct coverage determinations for claims that plaintiff-intervenor never submitted.

## III.    PLAINTIFF-INTERVENOR HAS FAILED TO STATE A COGNIZABLE CLAIM UNDER THE DECLARATORY JUDGMENT ACT

The gravamen of plaintiff-intervenor's claim against the Secretary has always been that the ALJ ordered defendants to conduct coverage determinations for the claims that were subject to Time Limit Reject notices.  Plaintiff-intervenor confirms this fact in asserting that the

"controversy" is "Med-Center's need for a declaration as to whether the Federal Defendants must process the claims that resulted in Time Reject Notices." Pl. Mem. at 21. The declaratory relief claim, in other words, is a restatement of its claim that the ALJ decisions entitle it to coverage determinations. See Pl. Mem. at 21-24. Thus, even assuming that this Court has jurisdiction to resolve the dispute between the parties over the meaning of the ALJ decisions, there is no cognizable controversy that exists separate and apart from those decisions.[10] Accordingly, because plaintiff-intervenor has failed to state a claim as to its assertion that it is entitled to coverage determinations, the Court lacks jurisdiction over plaintiff-intervenor's claim for declaratory judgment.

Plaintiff-intervenor is also not entitled to relief for a variety of reasons on its request for a declaration that the "Federal Defendants are in violation of federal law" and "abdicated its (sic) duty to oversee the state Medicaid program" by "permitting states to direct providers such as Med-Center to submit belated claim submissions – without providing the Connecticut Medicaid program a waiver." Pl. Mem. at 23. This request is nothing more than a make-weight argument that suffers from a variety of additional defects.

---

[10]    The Secretary has previously explained that this Court lacks jurisdiction over plaintiff-intervenor's claims relating to the ALJ decisions because (1) there is no federal question jurisdiction over claims related to Medicare reimbursement issues; (2) there has been no final decision under the Medicare Act because the ALJ dismissed the case rather than rendering a decision after a hearing; and (3) mandamus jurisdiction is not appropriate because the Secretary was not under a clear non-discretionary duty to follow the ALJ's remand language after he concluded he lacked jurisdiction. Defendants' Memorandum of Law in Support of Motion to Dismiss Intervenors' Amended Complaint at 10-16; Defendants' Reply Memorandum of Law in Support of Motion to Dismiss Intervenors' Amended Complaint at 2-7. Because plaintiff-intervenor's instant motion offers no new arguments in response to these points, defendants rely on the arguments in those memoranda.

First, the Court lacks jurisdiction over this claim due to the failure to exhaust administrative remedies, which is a jurisdictional prerequisite to seeking a declaration as to what HHS' procedures should be.  Shalala v. Illinois Council on Long Term Care, 529 U.S. 1 (2000).[11] General federal question jurisdiction is unavailable for such a claim and indeed, plaintiff-intervenor does not assert that the Court has jurisdiction on this basis.  Id.; Plaintiffs-Intervenors' Statement Pursuant to Local Rule 9(c)1 ¶ 2.

Second, there is no live controversy between plaintiff-intervenor and the federal defendants as to this particular claim.  The requested declaratory relief would not redress any asserted injury attributable to the federal government.  Plaintiff-intervenor's claims would still be time-barred, and plaintiff-intervenor's claims would still not be entitled to coverage determinations or Medicare reimbursement.[12]  Indeed, plaintiff-intervenor does not even assert that there is a case or controversy as to this particular claim for declaratory relief, but rather asserts only that there is a live controversy as to "whether the Federal Defendants must process

---

[11]     Plaintiff-intervenor incorrectly asserts that defendants' initial motion for summary judgment (submitted on April 26, 2002) cited only cases standing for the principle that "there needs to be a separate basis for jurisdiction apart from a declaration of rights and the dispute must be actual, not theoretical in nature. . . ."  Pl. Mem. at 22.  In fact, defendants' motion pointed out that Illinois Council barred jurisdiction, and also incorporated by reference the earlier arguments made in defendants' motion to dismiss for lack of jurisdiction.  See Memorandum of Law in Support of Initial Motion for Summary Judgment on Plaintiff-Intervenors' Amended Complaint at note 1 and 11; see also note 10, supra (describing those arguments).  Plaintiff-intervenor ignores these arguments and addresses only the argument that there is no case or controversy.

[12]     Moreover, even assuming that a finding that Connecticut violated 42 C.F.R. § 433.139 by "paying and chasing" without a waiver would mean that Connecticut was liable for the claims that it asked plaintiff-intervenor to submit – a conclusion for which plaintiff-intervenor provides no support – a declaration in this proceeding would be no help to plaintiff-intervenor in resisting recoupments by Connecticut for the obvious reason that such relief would not bind Connecticut who is no longer a party to this proceeding.

the claims that resulted in Time Reject Notices," a determination that has nothing to do with whether defendants should have taken some enforcement action against Connecticut for its alleged "pay and chase" violations.  Pl. Mem. at 21.

    Third, plaintiff-intervenor fails to identify any duty imposed by any statute or regulation requiring defendants to take any particular action against a party who violates 42 C.F.R. §§ 433.138 or 433.139(e).  Sections 433.138 and 433.139 impose obligations only on state agencies, and so if there is any violation of those provisions it is by Connecticut.  While vaguely accusing defendants of abdicating their "duty to oversee the state Medicaid program," Pl. Mem. at 23, plaintiff-intervenor fails to identify any specific action that defendants should have taken with respect to Connecticut's purported violations.  The only means available to the Secretary for enforcing compliance with the requirements of the State plan is the withholding of federal payments, 42 U.S.C. § 1396c, and plaintiff-intervenor is unwilling to say that the Secretary should have taken this significant step.[13]  Yet even assuming that plaintiff-intervenor had made such an assertion, and even assuming that Connecticut was violating the law, the agency's decision not to hold a hearing on withholding of Federal Financial Participation is squarely committed to the agency's discretion and not subject to judicial review.[14]

_____

    [13]    It is worth noting that the State of Connecticut's perception that CMS had stated in a letter that Connecticut could not recoup payments previously made to plaintiff-intervenor and other providers was what prompted this litigation in the first place.

    [14]    See Arthur C. Logan Memorial Hospital v. Toia, 441 F. Supp. 26, 27 (S.D.N.Y. 1977) ("Under the Medicaid statute, it is within the discretion of the Secretary to hold a compliance hearing pursuant to 42 U.S.C. § 1396c.  The ordering of such a hearing is not within the mandamus power of this Court."); Phoenix Baptist Hospital and Medical Center, Inc. v. United States, 937 F.2d 452, 453 (9th Cir. 1991) (holding that "the decision as to whether a compliance hearing is warranted" concerning withholding of federal Medicaid payments "is

                                                                                                    (continued...)

14

In an effective illustration of the misguided nature of plaintiff-intervenor's claims, plaintiff-intervenor asserts in the final section of its memorandum that the "absence of a coverage determination one way or another prevents closure of the claims encompassed by the ALJ decisions." Pl. Mem. at 24. But plaintiff-intervenor is not entitled to "closure" or coverage determinations on the claims at issue because it indisputably did not submit them on time (and indeed, did not submit them at all). Nothing in the law excused plaintiff-intervenor's failure to meet those deadlines, and nothing in the law entitles plaintiff-intervenor to require fiscal intermediaries to issue what would amount to advisory opinions as to whether a given service would have been covered had the claim for the service been timely submitted. Further, as

---

[14](...continued)
discretionary"); Steele v. Magnant, 796 F. Supp. 1143, 1150 (N.D. Ind. 1992) (decision whether to proceed with a compliance hearing to enforce State compliance with the notice requirements of the Medicaid statute was within the Secretary's discretion and unreviewable); see also generally Heckler v. Chaney, 470 U.S. 821 (1985) (decisions not to enforce are subject to a general presumption of unreviewability).

It is also worth noting that plaintiff-intervenor has done nothing to establish that Connecticut ever violated the law, let alone that the Federal defendants violated the law. The regulations state only that a state Medicaid agency must take certain measures "to determine the legal liability of third parties," 42 U.S.C. § 433.138(a), and should not pay claims without a waiver if "the agency has established the probable existence of third party liability at the time the claim is filed. . . ." 42 C.F.R. § 433.139(b)(1). While it is undisputed that Connecticut did not have a waiver and that Connecticut paid the claims for which it later sought reimbursement, plaintiff-intervenor has presented no evidence that Connecticut "had established the probable existence of third party liability at the time the claim[s were] filed." The only reference to this issue in plaintiff-intervenor's statement of undisputed material facts is the entirely conclusory assertion that "CT DSS is in violation of its state plan," see Plaintiff-Intervenors' Statement Pursuant to Local Rule 9(c)(1) ¶ 92, a statement for which plaintiff-intervenor provides no factual support. Plaintiff-intervenor therefore has presented no evidence that Connecticut needed a waiver to pay the claims, or that it violated the law in doing so. Instead, plaintiff-intervenor improperly asks the Court to conclude without evidence that Connecticut was "paying and chasing," and then to find that the Secretary was in violation of its duty under the Medicaid statute by not taking an unspecified action to stop Connecticut from doing something that it is not even clear that it was doing.

explained in section I, the portions of the ALJ's decisions relied on by plaintiff-intervenor were ineffective <u>dicta</u> and in any event, did not purport to order anything more than treatment of the requests for hearing as requests for reconsideration of the Time Limit Reject notices, with good cause existing for their untimely filing.

<u>**CONCLUSION**</u>

For the foregoing reasons, and the reasons set forth in defendants' initial memorandum in support of defendants' motion for summary judgment, plaintiff-intervenor's motion should be denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KEVIN J. O'CONNOR
United States Attorney

PATRICK F. CARUSO
Assistant United States Attorney

CAROLYN A. IKARI
Assistant United States Attorney

Of Counsel                                          SHEILA M. LIEBER
DONALD H. ROMANO                       Deputy Branch Director
Attorney
Office of the General Counsel
Department of Health
and Human Services                             _____
                                                             SAMUEL C. KAPLAN
                                                             U.S. Department of Justice
                                                             Civil Division
                                                             Federal Programs Branch,
                                                             P.O. Box 883
                                                             Washington, DC  20044
                                                             (202) 514-4686 (phone)
                                                             (202) 616-8202 (fax)
                                                             Federal Bar No. CT26054

                                                             Attorneys for Defendants

Dated:  January 28, 2005

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 28th day of January, 2005, a copy of the foregoing Opposition

to Plaintiff-Intervenor's Motion for Summary Judgment and Local Rule 56(a)(2) Statement was

served, by Federal Express, addressed to the following:

David Wynn
Arent Fox
1675 Broadway, 25th Floor
New York, New York  10019-5820


_____

SAMUEL C. KAPLAN