UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------------------x

| | |
|---|---|
| COMMUNITY VISITING NURSE AND HOME CARE AGENCY, INC.; MED-CENTER HOME HEALTH CARE, INC.; PRIORITY CARE, INC.; STAFF BUILDERS HOME HEALTH CARE, INC. and OTHER SIMILARLY SITUATED HOME HEALTH AGENCIES, | : |
| | : |
| Plaintiffs and Intervenors, | : |
| | : |
| PATRICIA WILSON-COKER, Commissioner of Social Services, and CONNECTICUT STATE DEPARTMENT OF SOCIAL SERVICES; and ELLEN JOHNSON, IRMA YOXALL, and JESSIE VEREEN, on behalf of themselves and all others similarly situated, | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : |
| | : |
| TOMMY THOMPSON, et al., | : |
| | : |
| Defendants, | : |
| | : |
| ASSOCIATED HOSPITAL SERVICE; and UNITED GOVERNMENT SERVICES, INC., | : |
| | : |
| Additional Defendants. | : |

Civil Action No.
3:00 CV-1312 (CFD)

---------------------------------------------------------------------x


MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT


Arent Fox PLLC
1675 Broadway
New York, New York 10019

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................... 1

SUMMARY OF ARGUMENT ....................................................................................... 2

FACTUAL BACKGROUND OF MED-CENTER'S CLAIMS AGAINST THE
    FEDERAL DEFENDANTS ...................................................................................... 3

ARGUMENT ................................................................................................................... 6

I.    MED-CENTER IS ENTITLED TO AN ORDER COMPELLING THE
    FEDERAL DEFENDANTS TO PROCESS THE PROVIDER CLAIMS ...................... 6

    A.    The ALJ Decision Remanded the Matter to the Fiscal Intermediaries to
        Make Coverage Determinations ......................................................................... 7

    B.    The Federal Defendants Contemporaneous Conduct Is Not Consistent with
        Remand of the Time Reject Notices ................................................................ 10

II.    MED-CENTER HAS STATED A VALID CLAIM AGAINST THE FEDERAL
    DEFENDANTS UNDER THE DECLARATORY JUDGMENT ACT ......................... 12

    A.    Med-Center Seeks Declaratory Relief Against the Federal Defendants.............. 13

    B.    A Present Controversy Exists Between the Parties............................................. 14

CONCLUSION............................................................................................................... 17

# TABLE OF AUTHORITIES

## CASES

Page

City of New York v. United State Dep't of Commerce,
739 F. Supp. 761 (S.D.N.Y. 1990) ...................................................................14

Dietsch v. Schweiker,
    700 F.2d 865 (2d Cir. 1983).........................................................................11

Greater New York Hosp. Ass'n v. United States,
No. 98 Civ 2741, 1991 WL 1021561, at *1 (S.D.N.Y. Nov. 9, 1999) ...............14

Skelly Oil Co. v. Phillips Petroleum Co.,
    339 U.S. 667 (1950)................................................................................13, 14

Thomas v. City of New York,
143 F.3d 31 (2d Cir. 1998)............................................................................14

Warner-Jenkinson Co. v. Allied Chem. Corp.,
    567 F.2d 184 (2d Cir. 1977)........................................................................14

## STATUTES and RULES

20 C.F.R. § 404.967 .......................................................................................11

20 C.F.R. § 404, subparts J and R....................................................................12

42 C.F.R. § 405.701 .......................................................................................12

42 C.F.R. §§ 405.701 – 405.753 ......................................................................11

42 C.F.R. §§ 405.708 – 405.710 ......................................................................11

42 C.F.R. § 405.715 .......................................................................................11

42 C.F.R. § 405.717 .......................................................................................11

42 C.F.R. § 405.724 .......................................................................................11

42 C.F.R. § 405.730 .......................................................................................11

42 C.F.R. § 424.32 ...........................................................................................5

42 C.F.R. § 433.138 ....................................................................3, 4, 5, 13, 14, 16

42 C.F.R. § 433.139 ...................................................................................3, 4, 5, 13, 14, 16

Social Security Act § 1879 ...................................................................................10

42 U.S.C. § 1396a ...................................................................................4

42 U.S.C. § 1395pp ...................................................................................10

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------------x

COMMUNITY VISITING NURSE AND HOME           :
CARE AGENCY, INC.; MED-CENTER HOME          :
HEALTH CARE, INC.; PRIORITY CARE, INC.;     :
STAFF BUILDERS HOME HEALTH CARE, INC.       :
and OTHER SIMILARLY SITUATED HOME           :
HEALTH AGENCIES,                            :
                                            :
                Plaintiffs and Intervenors, :     Civil Action No.
                                            :     3:00 CV-1312 (CFD)
PATRICIA WILSON-COKER, Commissioner of Social :
Services, and CONNECTICUT STATE DEPARTMENT  :
OF SOCIAL SERVICES; and ELLEN JOHNSON,      :
IRMA YOXALL, and JESSIE VEREEN, on behalf   :     MEMORANDUM OF LAW
of themselves and all others similarly situated, :  IN OPPOSITION TO
                                            :     DEFENDANTS'
                Plaintiffs,                 :     MOTION FOR
                                            :     SUMMARY JUDGMENT
                                            :
        v.                                  :
                                            :
TOMMY THOMPSON, et al.,                     :
                                            :
                Defendants,                 :
                                            :
ASSOCIATED HOSPITAL SERVICE; and            :
UNITED GOVERNMENT SERVICES, INC.,           :
                                            :
                Additional Defendants.      :
------------------------------------------------------------------------x

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted by plaintiff-intervenor Med-Center Home Health

Care, Inc. ("Med-Center") in opposition to the motion for summary judgment by defendants

Tommy Thompson, as Secretary of the Department of Health and Human Services, et al. (the

"Federal Defendants"). The Federal Defendants' motion seeks summary judgment on the

grounds that Administrative Law Judge Zwecker ("ALJ Zwecker") did not remand provider

claims subject to time reject notices to Medicare fiscal intermediaries to issue coverage

determinations, and that Med-Center cannot state a claim under the Declaratory Judgment Act.

For the reasons stated below, both contentions by the Federal Defendants are without merit: this Court should deny the Federal Defendants' motion for summary judgment and grant Med-Center's concurrent motion for summary judgment.

## SUMMARY OF ARGUMENT

As the Court can discern from the parties' summary judgment motions, the dispute in this case is the legal interpretation of thirty-seven substantially similar administrative law decisions issued by ALJ Zwecker. The decisions speak for themselves -- this Court should not accept the Federal Defendants' mischaracterization of the clear text of those decisions. Instead, the Court should examine the decisions for itself and effectuate the ALJ's remand direction through an order of mandamus.

The plain language of the ALJ decisions demonstrates that they constitute remands to the federal fiscal intermediaries to process late-filed provider claims for coverage determinations. In no uncertain terms, ALJ Zwecker held that "good cause" existed for the claims' late filing. This is the only logical interpretation of the ALJ decisions, since it gives weight and meaning to their full text. That interpretation (and the speciousness of the Federal Defendants' recharacterization of the decisions) is reinforced by the Federal Defendants' own contemporaneous conduct, which treated the ALJ decisions as remands -- not dismissals. Nonetheless, the Federal Defendants belatedly argue that the ALJ decisions were dismissals, and any such remand language was mere dicta.

The Federal Defendants' strained reading of the ALJ decisions is also undermined by their misstatement of the relevant facts involved here. Although they claim that the remanded provider claims were never submitted to the fiscal intermediaries, the record before this Court belies this argument. In fact, the claims were submitted, and the Federal Defendants refused to process the claims and later chose to ignore the ALJ's order to process them. Therefore, under

Count II of the Amended Intervenor Complaint, Med-Center seeks mandamus ordering

processing of the claims.

Med-Center is not only entitled to declaratory relief that the disputed provider claims

need to be processed, but a declaration that the Federal Defendants have violated federal law by

allowing states to "pay and chase" provider claims without a waiver, as required by 42 C.F.R. §§

433.138 and 433.139(e).  As to the declaratory judgment component of the action, this Court

already sustained the propriety of declaratory relief when it denied the Federal Defendants'

motion to dismiss predicated on the same argument.  Nonetheless, the Federal Defendants

continue to argue that the Amended Intervenor Complaint does not present an actual controversy.

Once again, it is maintained that Med-Center's declaratory relief claim (Count III of the

Amended Intervenor Complaint) is "contingent" or based upon "future, hypothetical

recoupments that are not before" the Court.  (Federal Defendants Memorandum of Law in

Support of Summary Judgment at 17-19, hereinafter "Def. Mem.").  This argument is the almost

verbatim argument made in support of dismissal.  It was erroneous and rejected by this Court in

2002, and nothing has changed.  (Compare the Federal Defendants' Dismissal Motion at 19-21 to

the Def. Mem. at 17-19.)  Since the Federal Defendants have not altered the arguments rejected

by the Court in the motion to dismiss, the same result is warranted here.

## FACTUAL BACKGROUND OF MED-CENTER'S CLAIMS AGAINST
## THE FEDERAL DEFENDANTS

Med-Center has two claims against the Federal Defendants.  The predicate for both is the

interplay of federal law between the Medicare and Medicaid programs.[1]  Under applicable

federal law, states are required, *inter alia*: to adopt and obtain federal approval of their State

---

[1] Dually eligible patients are individuals who are covered by both the Medicare insurance program pursuant to Title XVII of the Social Security Act ("SSA"), known as Medicare beneficiaries, and the Medicaid entitlement program, Title XIX of the SSA.  When an individual is covered by both programs, they are called "dually eligible."

Medicaid Plan identifying liable third parties for payment of claims (Amended Intervenor Complaint ¶ 46); and to take reasonable measures to determine the liability of third parties who are liable for services furnished (Amended Intervenor Complaint ¶ 49). Federal approval by the Health Care Financing Administration ("HCFA" now known as Centers for Medicare and Medicaid Services ("CMS")) is required for states to undertake either "cost avoidance" -- which is the norm -- or a waiver of the cost avoidance requirement and permission to pursue "pay and recovery", commonly referred to as "pay and chase". (Amended Intervenor Complaint ¶ 51).

"Cost avoidance" requires a state Medicaid program to have procedures in place to identify liable third parties **before** paying claims. (Amended Intervenor Complaint ¶ 52). Further, while states need not follow cost avoidance methods, they can lawfully pursue "pay and chase" (recover payments **previously paid** by Medicaid from providers, see Amended Intervenor Complaint ¶¶ 57-66), only if they first obtain a waiver from the Federal government. See 42 C.F.R. §§ 433.138 and 433.139(e).

Here, it is admitted that no waiver was given by the Federal Defendants to the State of Connecticut Medicaid program (hereafter, "Connecticut"). (See Exhibit D to the Wynn Affidavit, part of Med-Center's concurrent motion for summary judgment (hereinafter "Wynn Affidavit"), Response to Admission Nos. 1-2; Amended Intervenor Complaint, Attachment 4). But the record shows Med-Center was subjected to "pay and chase". Specifically, it rendered services in the 1988-1996 period, made contemporaneous coverage determinations, billed the appropriate program, and was paid by Connecticut. (Amended Intervenor Complaint ¶¶ 27, 78-83 and Attachment 2).[2] This practice is "cost avoidance." However, in the mid-1990s, providers such as Med-Center were told by Connecticut to submit claims dating back to 1988 to the federal

---

[2] There is no dispute that Medicaid is the "payor of last resort". Def. Mem. at 8 (citing 42 U.S.C. §§ 1396a(a)(25)(A)-(B)).

fiscal intermediaries pursuant to its so-called "TPL Medicare Maximization project" (the "TPL project"). (See Amended Intervenors Complaint ¶¶ 95-96, Exhibit 5; see also Exhibit F to the Wynn Affidavit). In no uncertain terms, Med-Center was directed to look for Medicare coverage. The Federal Defendants allowed this to happen in violation of Connecticut's State Medicaid Plan and 42 C.F.R. §§ 433.138; 433.139(e), despite the admitted absence of a waiver.

Med-Center endeavored to comply with these directives and filed claims with the fiscal intermediaries looking for Medicare coverage determinations. This process was extremely time-consuming and laborious. (See Fanning Affidavit, attached to the Wynn Affidavit as Exhibit B, which details how claims formatted to be billed on a per-hour basis to Medicaid had to be recalculated on a per-visit basis to be submitted to Medicare).[3] Most of Med-Center's claims were ultimately submitted to the fiscal intermediaries but a small subset were not received until after the deadlines. As a result, the fiscal intermediary issued "Time Reject Notices" and refused to make coverage determinations as to whether those 37 claims were covered by Medicare. Because the fiscal intermediaries allowed this "pay and chase" to occur but would not make coverage determinations, Connecticut began recouping payments from Med-Center.

Med-Center objected to the failure to process the claims, citing the belated nature of the Requests and the extremely onerous task of recouping historical claims for filing with Medicare. (See Fanning Affidavit, attached to the Wynn Affidavit as Exhibit B). Nevertheless, the fiscal intermediaries refused to process the claims -- arguing they were untimely -- and issued the Time

---

[3]Federal regulations require a claim for home health services to include a claim on a UB92 form or an HCFA-1450-Uniform Institutional Provider Bill filed with the appropriate intermediary in accordance with HCFA instructions. The claim must be signed by the beneficiary or the beneficiary's representative. See 42 C.F.R. 424.32. This was no small task for Med-Center. Med-Center had to create new bills for Medicare by converting hourly units to visit units. This process involved locating the medical records and reviewing the clinical documentation, time sheets and payroll records of all the home health disciplines that provided services to each patient, for example nurses, home health aides, therapists, and social workers. Once the number and type of visits to be billed to Medicare were determined, Med-Center had to apply its rates for the various types of visits for the applicable time period. The details describing this intensive process were set forth in the summary statement incorporated by reference to the Fanning Affidavit attached to the Wynn Affidavit as Exhibit B.

Reject Notices.

This conduct set the stage for the core dispute of this motion. First, Med-Center sought and obtained the ALJ decisions concerning the 37 claims. It contends the ALJ remanded the claims to the fiscal intermediaries for review and coverage determinations. In contrast, the Federal Defendants deny that was the intent and refuse to comply with the ALJ's orders.[4] Thus, Count II of the Amended Intervenor Complaint seeks a judgment of mandamus directing that the coverage determinations ordered by the ALJ be processed, i.e., ordering the fiscal intermediaries to process the claims presented to the ALJ and make appropriate coverage determinations.

Second, separate from the application of the ALJ decisions, Med-Center seeks a declaration of its rights against the Federal Defendants under Count III. Med-Center seeks a declaration as to the unlawful nature of "pay and chase" without a waiver, i.e., that the Federal Defendants are in violation of the law by not enforcing federal law and allowing states (such as Connecticut) to engage in "pay and chase" without a waiver. By permitting states to belatedly submit claims for Medicare coverage -- which is exactly what happened here -- Med-Center has been forced to go through this burdensome, costly, and unlawful process.

## ARGUMENT

### I.    MED-CENTER IS ENTITLED TO AN ORDER COMPELLING THE FEDERAL DEFENDANTS TO PROCESS THE PROVIDER CLAIMS.

Both the plain language of ALJ Zwecker's decisions and the contemporaneous conduct of the Federal Defendants illustrate that the ALJ decisions ordered remands of the disputed provider claims for coverage determinations. Because the Federal Defendants have failed to comply with the remand orders of ALJ Zwecker and process the provider claims, their motion for summary judgment must be denied and Med-Center's motion for summary judgment must be granted.

**A.    The ALJ Decision Remanded the Matter to the Fiscal
Intermediaries to Make Coverage Determinations.**

ALJ Zwecker's decisions speak for themselves. This Court should ignore the Federal

Defendants' mischaracterization of the ALJ's decisions, but instead review them and effectuate

their plain meaning. Scrutiny of the decisions reveals that ALJ Zwecker intended there to be

further proceedings on the provider claims.

The Federal Defendants assert that ALJ Zwecker simply dismissed the claims and did not

remand them to the fiscal intermediaries to issue reconsidered determinations. The clear and

unambiguous language of the decisions themselves, however, consistently refutes the Federal

Defendants' contention.

First, there is no dispute that the 37 claims at issue in this litigation were filed beyond the

six-month deadline because of the administrative nightmare of filing claims years after the

services were rendered. (See Fanning Affidavit, attached to the Wynn Affidavit as Exhibit B).

This occurred because the Federal Defendants allowed Connecticut to engage in unauthorized

"pay and chase" without a waiver. (See Exhibit D to the Wynn Affidavit, Response to Admission

Nos. 1-2; Amended Intervenor Complaint, Attachment 4). However, if dismissal of the claims

due to lateness constituted the sum and substance of the ALJ's analysis, the decisions would

have merely been perfunctory dismissals on that basis. But the decisions do not end there.

Rather, the ALJ issued lengthy decisions in which he repeatedly made clear that further

proceedings on the untimely claims were necessary.

Second, ALJ Zwecker's decisions clearly state that:

> the unusual circumstances which prompted [Med-Center] to file a
> request for a hearing require the Administrative Law Judge to take
> further action to prevent [Med-Center] from being denied due

---

[4] A representative sample of the ALJ Decisions is part of the Administrative Record jointly filed by the parties
("A.R."), at 00061-00090.

> process.  That further action is to **remand** this case back to the
> intermediary with instructions to treat the [Med-Center's] request
> for a hearing as a request for reconsidered determination so that
> [Med-Center] will not be denied the opportunity to exercise its
> right to use the administrative appeals process.

See, e.g., A.R. at 00064-65 (emphasis added).

Third, they expressly hold that, "[t]he matter is **remanded** to the intermediary, which

shall treat the request for hearing as a request for **reconsideration**, with good cause existing for

its untimely filing.  The intermediary will notify the parties about their rights to a hearing in its

notice of the reconsideration determination."  See, e.g., A.R. at 00066 (emphasis added).  The

decisions further emphasize that, "since the determination that the provider could not charge the

beneficiary for the services at issue was an initial determination . . . the provider has a right to

request a reconsideration . . . ."  Id. at 00065.  There is simply no basis for this Court to conclude

this language does not mean what it says -- namely, that the claims were remanded to the fiscal

intermediaries for coverage determinations.  **None of this language makes any sense if there**

**were 37 dismissals!**

Notably, in a companion case in the same format as the Med-Center decisions, ALJ

Zwecker even went so far as to express frustration that he lacked authority to **enforce** his remand

decisions.  The ALJ added that the provider's remedy was to proceed in Federal Court if the

Federal Defendants failed to comply with his orders:

> The position statement of the appellant's attorney indicates that the
> Health Care Financing Administration has ignored the findings of
> the Administrative Law Judge in those earlier cases.  If the Health
> Care Financing Administration does not agree with the findings of
> an order of an Administrative Law Judge, its remedy is to appeal
> the order to the Medicare Appeals Council, otherwise known as the
> Departmental Appeals Board of the Department of Health and
> Human Services.  **An Administrative Law Judge of the Social**
> **Security Administration does not have the power to force the**
> **Health Care Financing Administration to follow its own rules**

**and to respect basic principals of due process. A United States District Court would have such power**, and assuming the requirements of Equal Access to Justice Act were met, the court could even compel the Health Care Financing Administration to pay the appellant's attorney for the value of his services.

(Notice of Dismissal and Remand to Middlesex Hospital Home Health Inc., from Judge Bruce H. Zwecker) (emphasis added).

Again, this language makes no sense whatsoever unless the ALJ contemplated further proceedings. The only way this Court can effectuate the full text of the decisions is to direct the fiscal intermediaries to process the claims that were the subject matter of the ALJ decisions; the Federal Defendants' assertion that this is <u>dicta</u> is simply without merit.[5]

Alternatively, the Federal Defendants assert that if the Court finds the remand language actionable, then ALJ Zwecker did not remand the claims to the fiscal intermediaries to make coverage determinations, but only to permit Med-Center to seek reconsideration of the Time Reject Notices -- specifically, a determination whether the beneficiary could be charged for the services. (<u>See</u> Def. Mem. at 11, 15). This (latest) spin on the ALJ decisions by the Federal Defendants similarly defies common sense. The idea that the ALJ was placing a burden on Med-Center to seek reconsideration, rather than on the Federal Defendants to process the claims, distorts the clear text of the ALJ decisions and the reference to the ALJ's finding of "good cause" for late filing of the disputed claims. <u>E.g.</u>, A.R. at 00066 (emphasis added). The good cause finding is a recognition of the laborious work required to compute Medicaid billing into Medicare bill format. (<u>See</u> Fanning Affidavit, attached to the Wynn Affidavit as Exhibit B).

Moreover, the Federal Defendants' argument puts the "cart before the horse." Before an ALJ can make a determination of whether a beneficiary is liable for services, the ALJ must first

---

[5] Med-Center should also obtain its legal fees, as referenced above by the ALJ.

decide whether Medicare covered the services. If Medicare covers the services, Medicare pays. If Medicare does not cover the services, only then must the ALJ decide whether the beneficiary is liable or whether that liability should be waived pursuant to 42 U.S.C. § 1395pp; see also Social Security Act § 1879 ("Limitation on Liability of Beneficiary Where Medicare Claims Are Disallowed") Even assuming, arguendo, for purposes of this memorandum of law only, that the Federal Defendants' reading of ALJ Zwecker's opinion is correct, and the remand order was limited to determining whether a beneficiary could be charged for those services, the fiscal intermediaries were still directed by ALJ Zwecker to issue reconsidered determinations (however narrow in scope), and the fiscal intermediaries, pursuant to instructions from CMS, still failed to comply with this order.

### B. The Federal Defendants Contemporaneous Conduct Is Not Consistent with Remand of the Time Reject Notices.

In a letter to ALJ Zwecker, dated September 26, 1997, from Paul Duplinsky, Manager of Administration of Medical Review and Appeals of HCFA, the Federal Defendants stated that they did not agree with the ALJ's decisions and would not comply with them. This letter stated in part:

> In reference to your last August dismissal **and instruction to perform a reconsideration on these cases**, since we have not made a decision concerning the coverage of any services, we have no basis for conducting a reconsideration. [Emphasis added.]

(See Exhibit E to Wynn Affidavit).

This letter is striking for a number of reasons. First, it explicitly refers to the ALJ's "instruction to perform a reconsideration on these cases." Id. This contemporaneous acknowledgement of the ALJ direction to reconsider the claims entirely belies the Federal Defendants' argument that the ALJ was dismissing the claims. Second, the Duplinsky letter ignores ALJ Zwecker's ruling that found "good cause" to treat the requests for hearings as

requests for reconsideration, as well as his decision to remand the claims to the fiscal

intermediary for determinations as to whether the services provided were covered by Medicare

and should be reimbursed by Medicare.  (Plaintiff-Intervenors Complaint ¶¶ 100-106 and

Attachments 3 and 8).

Third, while the Federal Defendants argue the ALJ order was a dismissal and the remand

language mere dicta, their contemporaneous position was that the government disagreed with the

ALJ's reasoning and would not implement the decision.  Had the government viewed it to be a

dismissal, the government would not be writing to the ALJ himself, explaining why HCFA

claimed the ALJ did not appreciate the context of the lateness of the claims.  There is no logical

explanation for this letter if, as the Federal Defendants now claim, there was a dismissal.

Although dissatisfied with the ALJ's rulings, the Federal Defendants did not appeal them to the

Appeals Council or Department of Appeals Board.  See 42 C.F.R. § 405.724; 20 C.F.R. §

404.967.[6]  The rulings thus became final, and binding, on the Federal Defendants.  The claims

need to be processed by an action for mandamus.  See Dietsch v. Schweiker, 700 F.2d 865, 868

(2d Cir. 1983) (District courts have mandamus jurisdiction over action to compel officer or

employee of United States or any agency to perform duty owed plaintiff).

Finally, the Federal Defendants argue that Med-Center failed to submit the claims at issue

---

[6] The administrative appeal process for denials of Medicare coverage under Part A is set forth in 42 C.F.R. §§
405.701 - 405.753.  A Notice of Initial Determination is final unless the individual, his representative, subrogee, or
the provider, where the provider of services is a party to the initial determination, requests a reconsideration of the
fiscal intermediary's initial decision.  42 C.F.R. §§ 405.708 - 405.710.  The reconsideration of the initial
determination is conducted by the same fiscal intermediary that made the initial determination or by HCFA.  42
C.F.R. § 405.715.  A Reconsideration Determination is final unless the individual, his representative, subrogee, or
the provider, where the provider of services is a party to the reconsidered determination, requests a hearing before an
administrative law judge ("ALJ").  The request must be made within 60 days (65 with mailing) of receipt of the
Notice of Reconsideration.  42 C.F.R. § 405.717.  An ALJ decision is final unless the individual, his representative,
subrogee, or the provider, where the provider of services is a party to the administrative hearing, requests an appeal
to the Departmental Appeals Board ("DAB").  The request must be made within 60 days (65 with mailing) of receipt
of the hearing decision.  42 C.F.R. § 405.724.  A party to a DAB decision or an ALJ decision, if the DAB does not
review the ALJ decision, may obtain judicial review of that final agency decision if the amount remaining in
controversy is $1,000 or more.  42 C.F.R. § 405.730.

in the ALJ decisions to the fiscal intermediaries.  (Def. Mem. at 3, 16).  This argument belies the fact that Time Reject Notices were issued for the 37 particular claims, which would not happen if the claims were not submitted.  Indeed, the fiscal intermediaries did not say the **claims** were not filed (which is the Federal Defendants' position), but rather that the claims were not **timely** filed. (See, e.g. A.R. 00051).

The Federal Defendants cannot explain how claims could be the subject of the Time Reject Notices if not filed.  To the extent the record is not fully defined, Med-Center asks that the court draw a negative inference against the Federal Defendants because they have failed to preserve the record, which it is their burden to do.  See 42 C.F.R. § 405.701(c) (incorporating subparts J and R of 20 C.F.R. part 404).

*     *     *

In summary, as the Federal Defendants' reading of the ALJ decisions is at odds with that of Med-Center's, the meaning of the ALJ decisions is a matter for judicial interpretation for this Court.  This Court should conclude, consistent with the holdings by ALJ Zwecker, that the ALJ directed the fiscal intermediaries to make coverage determinations because there was simply no other purpose for the remand.  Based upon the decisions themselves and the contemporaneous conduct of the Federal Defendants, Count II warrants an order of mandamus from the Court directing the fiscal intermediaries to act upon the decisions and process all claims subject to the Time Reject Notices.

## II.     MED-CENTER HAS STATED A VALID CLAIM AGAINST THE FEDERAL DEFENDANTS UNDER THE DECLARATORY JUDGMENT ACT.

Even if the Court were to agree with the Federal Defendants regarding the disputed interpretation of the ALJ decisions, Med-Center still would be entitled to summary judgment on its third count, for a declaratory judgment.  The record is undisputed that the Federal Defendants

violated federal law governing dually eligible patients by allowing Connecticut to "pay and chase" provider claims without a waiver.

First, as a preliminary matter the Federal Defendants assert that Med-Center has failed to state a claim under the Declaratory Judgment Act on the grounds that the relief sought does not relate to the Federal Defendants and that Med-Center does not have a present controversy against them. (Def. Mem. at 18). As these current arguments are almost verbatim to those rejected in the motion to dismiss, it is evident that the Federal Defendants have no new facts or legal arguments to warrant a different result. Because Med-Center has clearly requested declaratory relief relating to the Federal Defendants and a present controversy exists, the Federal Defendants' summary judgment motion should be denied and Med-Center's concurrent motion granted. Second, the Federal Defendants admittedly did not issue a waiver, thus the entire process Med-Center has been subjected to here violates 42 C.F.R. §§ 433.138 and 433.139(e). Med-Center is entitled to declaratory relief on that issue, irrespective of the Court's resolution of the dispute over the ALJ decisions.

### A.    Med-Center Seeks Declaratory Relief Against the Federal Defendants.

The Federal Defendants' assertion that Med-Center does not seek a declaration of rights relating to them simply ignores Count III of the Amended Intervenor Complaint. Count III of the Amended Intervenor Complaint is alleged against **all parties**, including the Federal Defendants. Paragraph 120(c) of the Complaint explicitly requests this Court to declare "the rights, obligations, and liabilities among the parties hereto" (see Amended Complaint ¶ 120), including specifically that the TPL project violated federal law.

The Federal Defendants again cite the same cases in support of their summary judgment motion and position that declaratory relief is unavailable here as they did in support of their motion to dismiss. See (Def. Mem. 17-18) (citing Skelly Oil Co., v. Phillips Petroleum Co. 339

U.S. 667 (1950); <u>Warner-Jenkinson Co. v. Allied Chem. Corp.</u>, 567 F.2d 184 (2d Cir. 1977);

<u>Greater New York Hosp. Ass'n v. United States</u>, No. 98 Civ. 2741, 1991 WL 1021561, at *1

(S.D.N.Y. Nov. 9, 1999); <u>Thomas v. City of New York</u>, 143 F.3d 31 (2d Cir. 1998)).  However,

these cases remain irrelevant to the issue before the Court.  Indeed, they only stand for the

general proposition that there needs to be a separate basis for jurisdiction apart from a

declaration of rights and the dispute must be actual, not theoretical in nature.[7]  None of the

Federal Defendants' cases refute the existence of federal court jurisdiction or the existence of the

actual case and controversy between the parties discussed <u>infra</u>.

The Amended Intervenor Complaint demonstrates an actual controversy directed to the

Federal Defendants.  At issue is Med-Center's need for a declaration as to whether the claims

submitted to the fiscal intermediaries for Medicare determinations that resulted in the Time

Reject Notices must be processed.  <u>See</u> <u>City of New York v. United States Dep't of Commerce</u>,

739 F. Supp. 761, 767 (S.D.N.Y. 1990) ("Where there is a substantial controversy between the

parties having adverse legal interests of sufficient immediacy, a case is ripe for declaratory

relief.").  Moreover, Med-Center seeks a declaration that the Federal Defendants are in violation

of federal law by allowing states (such as Connecticut) to "pay and chase" provider claims

without a waiver.  <u>See</u> 42 C.F.R. §§ 433.138; 433.139(e).

**B.    A Present Controversy Exists Between the Parties.**

Not only does an actual, present case and controversy exists between the Federal

Defendants and Med-Center, but the record is undisputed that the Federal Defendants are in

violation of federal law by allowing states (such as Connecticut) to "pay and chase" provider

---

[7] <u>See</u> <u>Skelly Oil</u>, <u>supra</u> (Declaratory Judgment Act allowed the Court to issue relief even if no enforcement was possible at that time, but it did not "enlarge" federal court jurisdiction); <u>Warner-Jenkinson Co.</u>, <u>supra</u> (Declaratory Judgment Act did not enlarge jurisdiction; but Court could entertain claim if there is jurisdiction and case and controversy exists); <u>Greater New York Hosp. Ass'n</u>, <u>supra</u> (suits based upon future or conditional events are not suited for declaratory judgment).

claims without the required waiver. (See Wynn Affidavit, Exhibit D, Response to Admission Nos. 1-2; Amended Intervenor Complaint, Attachment 4).

As detailed in Med-Center's Rule 9 statement, Federal approval by HCFA (now CMS) is required for states like Connecticut to pursue "pay and recover", commonly referred to as "pay and chase" under their State Medicaid Plan. (See Med-Center's Rule 9 stmt. ¶¶ 58-90; see also Amended Intervenor Complaint ¶ 51). Under "pay and chase" a state pays a provider's Medicaid claim and then later seeks reimbursement from a liable third party. (See Med-Center's Rule 9 stmt. ¶ 81). The norm, though, is for states to undertake "cost avoidance," whereby the probable liability of a third party is established by the state at the time the claim is filed by the provider with Medicaid. (See Med-Center's Rule 9 stmt. ¶ 72). By permitting Connecticut to violate its State Medicaid Plan and to engage in "pay and chase" without the necessary waiver, the Federal Defendants clearly violate basic tenets of federal law. (See Wynn Affidavit, Exhibit D, Response to Admission Nos. 1-2; Amended Intervenor Complaint, Attachment 4).

Had the Federal Defendants required Connecticut to adhere to the waiver requirement, as federal law mandates, then no recoupments, belated claims, or time reject notices would exist. However, it defies logic to call Med-Center's claims speculative or contingent (as the Federal Defendants do) because the Federal Defendants have failed to follow federal law, and Med-Center has suffered from unlawful recoupments because of that failure.

Moreover, this Court twice found there to be an actual existing conflict involving Med-Center and the Federal Defendants -- i.e., that Med-Center's interests were not coterminous with the Federal Defendants. This holding occurred initially on the Motion to Intervene when the Court concluded the interests of the plaintiff-intervenors (including Med-Center) were not protected by the Federal Defendants, and again when the Court denied the motion to re-align the

parties.  (See Decision dated September 24, 2002, at page 7).

Finally, the Court should be mindful that Med-Center is neither asking the Federal

Defendants to make a conclusive finding that Medicare is the liable third party nor to "review"

the ALJ decisions.  Rather, Med-Center seeks to: (1) compel *processing* of claims subject to

Time Reject Notices, as the fiscal intermediary was directed to do; or (2) determine they need

not be processed because they are the product of unlawful "pay and chase."  However, the

absence of a coverage determination without a declaration of the unlawful nature of "pay and

chase" prevents closure of the claims encompassed by the ALJ decisions.  As to the latter, the

Court would in effect be ruling that no coverage determinations need to be made at all because

the claims should not have been submitted to Medicare in the first instance.  This ruling would

obviate the need for processing of the 37 claims and require the Federal Defendants to enforce

the regulations and prevent unlawful "pay and chase."

In summary, the record before this Court is undisputed and can only lead to the following

conclusions:

- The Federal government never issued Connecticut a waiver to engage in "pay and chase" (See Wynn Affidavit, Exhibit D, Response to Admission Nos. 1-2; Amended Intervenor Complaint, Attachment 4).

- The 37 claims before the Court involving the ALJ decisions are a product of "pay and chase", not "cost avoidance".

- The Federal Defendants have not enforced Connecticut's State Medicaid Plan requirements, and Med-Center has therefore been subjected to unlawful recoupments through "pay and chase" in violation of 42 C.F.R. §§ 433.138.433.139(e).

- Med-Center has been damaged by the Federal Defendants' violation of the law, which has subjected Med-Center to unlawful "pay and chase".

## CONCLUSION

For the foregoing reasons, the Federal Defendants' motion for summary judgment should

be denied, and summary judgment should be granted in favor of Med-Center.


Dated:  January 28, 2005
         New York, New York



                                    Respectfully submitted,



                                    _____
                                    Connie A. Raffa, admitted *pro hac vice*
                                    David N. Wynn, admitted *pro hac vice*
                                    Eric S. Lent, admitted in New York only

                                    *Attorneys for Plaintiff-Intervenor*
                                    *Med-Center Home Health Care Agency, Inc.*

                                    Arent Fox PLLC
                                    1675 Broadway
                                    New York, New York 10019
                                    Tel. (212) 484-3900
                                    Fax. (212) 484-3990

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2005, I caused to be served a true and correct copy of Plaintiff's **Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment** by federal express upon:

Sam Kaplan
U.S. Department of Justice
Federal Programs Branch
20 Massachusetts Avenue NW
Washington, D.C. 20001

EXECUTED on January 28, 2005

_____
Eric Lent