IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| PATRICIA WILSON-COKER, Commissioner of Social Services, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| COMMUNITY VISITING NURSE AND HOME CARE AGENCY, INC; MED-CENTER HOME HEALTH CARE, INC; PRIORITY CARE, INC; STAFF BUILDERS HOME HEALTH CARE, INC., and OTHER SIMILARLY SITUATED HOME HEALTH AGENCIES, | ) ) ) ) ) ) ) ) | |
| Plaintiff-Intervenors, | ) ) | |
| v. | ) ) | Civil Action No. 3:00CV1312 (CFD) |
| MIKE LEAVITT, Secretary, United States Department of Health and Human Services, et al.,[1] | ) ) ) ) | February 15, 2005 |
| Defendants, and | ) ) | |
| ASSOCIATED HOSPITAL SERVICE; and UNITED GOVERNMENT SERVICES, INC., | ) ) ) | |
| Additional Defendants. | ) ) | |

## REPLY TO PLAINTIFF-INTERVENOR'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

While plaintiff-intervenor's opposition to defendants' motion for summary judgment ("Pl. Opp.") does nothing to shed light on the meaning of the 37 ALJ decisions at issue in this case, it successfully highlights the central defects of its claim that the ALJ ordered defendants to conduct Medicare coverage determinations for time-barred claims.

---

[1]    Pursuant to Fed. R. Civ. P. 25(d), Mike Leavitt, in his official capacity as Secretary of Health and Human Services, substitutes for Tommy Thompson.

First, plaintiff-intervenor asserts that the ALJ found "'good cause'" for the "late filing of the disputed claims." Pl. Opp. at 9. Plaintiff-intervenor identifies no support in the ALJ decisions for this statement, and there is none. As the quotations in footnote 2 make clear, the ALJ found "good cause" for plaintiff-intervenor's failure to file a request for reconsideration, within the required 60-day time period, of the statement in the Time Limit Reject notices that the beneficiaries could not be charged,[2] not for its failure to file claims for Medicare reimbursement within the six-month extension deadline.[3] There is no discussion whatsoever of good cause for failure to meet the six-month deadline.

Given that the ALJ did not find that there was good cause for late filing of the claims, plaintiff-intervenor must resort to inventing a fictional basis for this fictional finding.

---

[2]    See Sample Orders of Dismissal and Remand, HHS 0064, 0070, 0076, 0082, 0088 ("It was the last sentence of this notice that prompted the appellant to try to appeal the 'Time Limit Reject.'"); id. at HHS 0065, 0071, 0077, 0083, 0089 ("The intermediary's 'time limit reject' notice did not state its reason for finding that the beneficiary could not be charged for the services at issue.'"); id. ("Since the determination that the provider could not charge the beneficiary for the services at issue was an initial determination, as defined in Health Care Financing Administration regulation 42 C.F.R. 405.704(c), the provider has a right to request a reconsideration . . . ."); id.

[3]    Sample of Orders of Dismissal and Remand, HHS 0065, 0071, 0077, 0083, 0089 ("Although the request for hearing (which shall be treated as a request for reconsideration) was not filed within 60 days after the date of the notice of the initial determination, the defects in the notice of the initial determination provide the appellant with good cause for not filing a request for reconsideration within the 60 day time period") (emphasis added).

Contrast Sample of Time Limit Reject Notices, A.R. HHS 0035, 0041, 0048, 0054, 0057, 0060 ("We did not receive a claim for the above-mentioned third party liability case within six (6) months of our request for Medicare bill(s) and supporting documentation. We are therefore not able to make a coverage decision for services rendered by the home health agency for the requested service period. This case is rejected because the time limit to submit a Medicare bill has expired. This rejection is based on the Code of Federal Regulations 424.45(c).") (emphasis added).

Specifically, plaintiff-intervenor asserts, without citation to the ALJ decisions, that the "good cause finding is a recognition of the laborious work required to compute Medicaid billing into Medicare bill format." Pl. Opp. at 9. This statement is entirely fanciful. One searches in vain for anything in the ALJ decisions about "laborious work" or anything that would justify a finding of "good cause" for the late filing of Medicare claims. Defendants respectfully submit that if there were any merit to its position in this litigation, plaintiff-intervenor would not find it necessary to resort to baseless statements to support it.

Second, defendants' initial memorandum established that plaintiff-intervenor did not just file claims late – a failure that by itself would bar Medicare reimbursement; instead, it never filed them at all – a failure that renders its position absurd. Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Def. Mem.") at 9, 16. In support, defendants pointed to two letters, one from plaintiff-intervenor's lawyer and one from a representative of the fiscal intermediary, both issued well over one year after the issuance of the Time Limit Reject notices, and both indicating that, as of that time, claims had not been filed.[4] In addition, defendants are submitting with this reply the attached Declaration of Donna L. Trufant ("Trufant Dec.") (Attachment 1). Ms. Trufant, who is a Manager of Medical Review and Appeals at Associated Hospital Service, the fiscal intermediary for plaintiff-intervenor, states in her declaration that AHS never received claims for the beneficiaries and dates of service that are the subject of this litigation. Trufant Dec. at ¶¶ 2-3.

---

[4]    See Def. Mem. at 9; Letter from Sandra A. Trionfini to Hon. Bruce H. Zwecker, July 7, 1997, A.R. HHS 0007 (indicating that Med-Center had not provided the medical records necessary to process the claims); Letter from Paul D. Duplinsky to Bruce H. Zwecker ("Duplinsky Letter"), September 26, 1997, A.R. HHS 0016-17 (stating that the fiscal intermediary never received claims folders for the 37 beneficiaries at issue).

While the Trufant declaration definitively resolves the issue, defendants will address the points made by plaintiff-intervenor on this subject. Pl. Opp. at 11-12. However, it is worth pausing at the outset to note that plaintiff-intervenor does not present any evidence of its own that it ever filed the claims, evidence that would surely be in its possession if it had filed the claims. It says that the "small subset" of claims at issue "were not received until after the deadlines," Pl. Opp. at 5, falsely implying that they were received at some point, but never produces any evidence that they were submitted. Plaintiff-intervenor's failure to produce evidence that the claims were ever filed – or even that is capable of filing such claims today – is the "dog that did not bark" of this litigation. It also means that plaintiff-intervenor has produced no evidence to contradict Ms. Trufant's declaration.

Instead of producing evidence that the claims were filed or addressing the documents relied on by defendants, plaintiff-intervenor first asserts that claims must have been filed because Time Limit Reject notices were issued. Pl. Opp. at 12. It asserts that the "Federal Defendants cannot explain how claims could be the subject of Time Limit Reject notices if not filed." Id. In fact, the explanation is quite simple. The fiscal intermediary's practice at the time was to issue Time Limit Reject notices automatically if claims were not filed within six months of the submission of Statements of Intent by, in this case, the Center for Medicare Advocacy.[5] See Attachment 1, Trufant Dec. at ¶ 4. The filing of claims, in other words, was in no way a prerequisite for the issuance of Time Limit Reject notices. Id.

---

[5]    Counsel for defendants explained this procedure in response to a similar point made by counsel for plaintiff-intervenor in a prior teleconference with the Court concerning the administrative record.

Plaintiff-intervenor also asserts that the Court should "draw a negative inference against the Federal Defendants because they have failed to preserve the record, which it is their burden to do." Pl. Opp. at 12. Thus, plaintiff-intervenor seeks to have the Court infer that claims were filed by the fact that defendants have no record of having ever received claims. This surreal twist is, to put it mildly, unconvincing. More to the point is that <u>plaintiff-intervenor</u> apparently has no record of the claims having ever been filed. Surely, if it had filed them, it would have some contemporaneous record of doing so in its own files. As stated above, defendants have submitted the Trufant declaration to resolve any doubt as to this question.

<u>Third</u>, while defendants purport to believe that "ALJ Zwecker's decisions speak for themselves," Pl. Opp. at 7, that the decisions "are clear and unambiguous," <u>id</u>. at 7, and that it is relying on the "plain language of the ALJ decisions," and their "plain meaning," <u>id</u>. at 2, 7, it is defendants whose filings have taken the Court step-by-step through the decisions, tracking their precise language at every step. <u>See</u> Memorandum of Law in Support of Defendants' Motion for Summary Judgment at 12-15; Opposition to Plaintiff-Intervenor's Motion for Summary Judgment at 3-5. At the same time, it is plaintiff-intervenor that consistently resorts to the conceit that the decisions must mean what plaintiff-intervenor says, or they would be "illogical," Plaintiff-Intervenor's Memorandum of Law in Support of Motion for Summary Judgment at 20, "make no sense," Pl. Opp. at 9, or "defy common sense," <u>id</u>.

Moreover, as explained in defendants' opposition to plaintiff-intervenor's motion for summary judgment, the plain meaning of the ALJ decisions is not "illogical." The ALJ concluded that the Time Limit Reject notices' statement that the plaintiff-intervenor could not charge the beneficiary was an initial determination and therefore, the notices should have

contained appeal language.  Sample of Orders of Dismissal and Remand at HHS 0065, 0071, 0077, 0083, 0089.  Because the notices did not contain appeals language, the ALJ remanded to the intermediary "to treat the request for hearing as a request for reconsideration, with good cause existing for its untimely filing."  Id. at HHS 0066, HHS 0078, HHS 0084, HHS 0090.  The quotations in footnote 2, supra, demonstrate that the ALJ believed that the subject of the request for reconsideration would be the portion of the Time Limit Reject notices stating that the beneficiary could not be charged.

By contrast, it is plaintiff-intervenor's "interpretation" that poses the following unanswerable questions:  How could the ALJ have meant to excuse plaintiff-intervenor from the six-month filing deadline for filing claims when he addressed only the 60-day deadline for filing requests for reconsideration?  How could the ALJ have found "good cause" for failure to meet the Medicare filing deadline without offering any justification for such a finding, let alone the specific justification that defendants assert?  Why would the ALJ have ordered reconsideration of coverage determinations when no coverage determinations were made because no claims were ever filed?  As stated supra in the first and second points, plaintiff-intervenor has had to make up text and incorrectly assert that claims were filed to answer these questions, sure signs that its assessment is flawed.

Plaintiff-intervenor asserts that even assuming that defendants are correct, the fiscal intermediary did not conduct the narrow reconsideration ordered by the ALJ.  Pl. Opp. at 10.  As stated in defendants' opposition, Def. Opp. at 6 note 5, this assertion is irrelevant because the narrow reconsideration is not the relief that plaintiff-intervenor seeks in this litigation.  In

addition, defendants also did reexamine the decisions and concluded that there was no basis for a different decision.  Id.

        Fourth, rather than focus on the relevant questions of what the ALJ ordered and his authority to issue the orders, plaintiff-intervenor devotes pages of its opposition to establishing the undisputed point that the ALJ "contemplated" some further proceedings after dismissal.  Pl. Opp. at 7-9.  Because the ALJ believed himself to be doing something more than dismissing, plaintiff-intervenor concludes that the "remand" portion is not dicta.  In focusing solely on the ALJ's subjective state of mind, however, plaintiff-intervenor misses the point that an ALJ who lacks jurisdiction has no authority to do anything other than to dismiss the request for hearing. Just as a litigant is not subject to contempt sanctions for violating an order that a court had no jurisdiction to issue, orders issued by an ALJ that lacks jurisdiction to issue them are void ab initio, and need not be followed.  See Prayze FM v. F.C.C., 214 F.3d 245, 253 (2d Cir. 2000) (holding that the litigant could not "be subject to contempt sanctions for violating that injunction since the district court was without jurisdiction to enter it"); see also, e.g., In re Green, 369 U.S. 689, 693 (1962) ("a state court is without power to hold one in contempt for violating an injunction that the state court had no power to enter by reason of federal pre-emption").  Even if this were not the case, an order from an ALJ who lacked jurisdiction to issue it (whatever its meaning) is certainly not the "clear nondiscretionary duty," that is necessary to provide a basis for mandamus jurisdiction.[6]

_____

        [6]     See Your Home Visiting Nurse Services, Inc. v. Shalala, 525 U.S. 449, 456-57 (1999) (entitlement to mandamus relief requires plaintiff to establish "a clear nondiscretionary duty") (internal quotation marks and citation omitted); Anderson v. Bowen, 881 F.2d 1, 5 (2d Cir. 1989) (prerequisites for mandamus relief include "a clear right in the plaintiff to the relief
(continued...)

Plaintiff-intervenor fails in its opposition to point to anything in the regulations that authorized the ALJ to issue a "remand" order after dismissing the case for lack of jurisdiction. Instead, it focuses on the irrelevant point that the ALJ believed himself to be remanding, or that a CMS official purportedly did not treat it as a dismissal, Pl. Opp. at 10-11, and then attempts to play "Gotcha" by faulting defendants for not appealing a part of the decision that the ALJ himself found he lacked jurisdiction to issue.  Pl. Mem. at 19-20; Pl. Opp. at 11.  This effort is unavailing both because plaintiff-intervenor misinterprets the decision, see supra, and because after the ALJ dismissed the request for hearing, any additional order in the decision is of no effect regardless of his state of mind.

Fifth, plaintif-intervenor's pretense that it has a declaratory judgment claim that defendants are in violation of the law for allegedly permitting Connecticut to "pay and chase" without a waiver, fails for a variety of reasons, namely:

- There is no independent basis of jurisdiction for this claim.  Plaintiff-intervenor appears to recognize that general federal question jurisdiction is unavailable, see Plaintiffs-Intervenors' Statement Pursuant to Local Rule 9(c)1 ¶ 2, and does not dispute in its opposition that it has failed to exhaust administrative remedies as to this claim as pointed out in defendants' initial memorandum.  Def. Mem. at 18 (citing Shalala v. Illinois Council on Long Term Care, 529 U.S. 1 (2000)).  Moreover, plaintiff-intervenor's mandamus claim relates solely to the ALJ decisions, not CMS' general policies concerning "pay and chase."  The ALJ also did not order what the plaintiff-intervenor claims, and had no authority to do anything other than dismiss the claims.  See supra.  There is accordingly no independent jurisdictional basis for plaintiff-intervenor's "pay and chase" declaratory relief claim.

---

[6](...continued)
sought" and "a plainly defined and peremptory duty on the part of the defendant to do the act in question").

- Even assuming that the claims at issue resulted from violations of Connecticut's state plan, see the fourth bullet point, the agency's decision not to hold a hearing on withholding of Federal Financial Participation is squarely committed to the agency's discretion and not subject to judicial review.[7]

- There is no justiciable case or controversy as to this claim because it would not redress any injury. Plaintiff-intervenor's Medicare claims would still be time-barred, and it would still not be entitled to coverage determinations or Medicare reimbursement. A declaration that the recoupments were unlawful could at most be helpful against Connecticut, which is no longer a party to this litigation and therefore would not be bound by it.[8]

- There are no facts in the record establishing that Connecticut has violated the law, let alone that defendants should have threatened to withhold Federal Financial Participation for such alleged violations.[9]

---

[7]    The only means available to the Secretary for enforcing compliance with the requirements of the State plan is the withholding of federal payments, 42 U.S.C. § 1396c, and various courts have held that this decision is committed to agency discretion. See Arthur C. Logan Memorial Hospital v. Toia, 441 F. Supp. 26, 27 (S.D.N.Y. 1977) ("Under the Medicaid statute, it is within the discretion of the Secretary to hold a compliance hearing pursuant to 42 U.S.C. § 1396c. The ordering of such a hearing is not within the mandamus power of this Court."); Phoenix Baptist Hospital and Medical Center, Inc. v. United States, 937 F.2d 452, 453 (9th Cir. 1991) (holding that "the decision as to whether a compliance hearing is warranted" concerning withholding of federal Medicaid payments "is discretionary"); Steele v. Magnant, 796 F. Supp. 1143, 1150 (N.D. Ind. 1992) (decision whether to proceed with a compliance hearing to enforce State compliance with the notice requirements of the Medicaid statute was within the Secretary's discretion and unreviewable); see also generally Heckler v. Chaney, 470 U.S. 821 (1985) (decisions not to enforce are subject to a general presumption of unreviewability).

[8]    Indeed, plaintiff-intervenor does not even assert that there is a case or controversy as to this particular claim for declaratory relief, but rather asserts only that there is a live controversy as to "whether the Federal Defendants must process the claims that resulted in Time Reject Notices," Pl. Mem. at 21, an entirely different question from whether defendants should have taken some enforcement action against Connecticut for its alleged "pay and chase" violations; see also Pl. Opp. at 14 (stating only that there is a live controversy as to "whether the claims submitted to the fiscal intermediaries for Medicare determinations that resulted in the Time Reject Notices must be processed").

[9]    The fact that Connecticut did not have a waiver yet paid first and later sought

(continued...)

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in defendants' prior filings, defendants' summary judgment motion should be granted.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td></td><td>PETER D. KEISLER<br>Assistant Attorney General</td></tr>
<tr><td></td><td>KEVIN J. O'CONNOR<br>United States Attorney</td></tr>
<tr><td></td><td>PATRICK F. CARUSO<br>Assistant United States Attorney</td></tr>
<tr><td></td><td>CAROLYN A. IKARI<br>Assistant United States Attorney</td></tr>
<tr><td>Of Counsel<br>ALEX M. AZAR<br>General Counsel</td><td>SHEILA M. LIEBER<br>Deputy Branch Director</td></tr>
<tr><td>ROBERT P. JAYE<br>Acting Associate General Counsel</td><td>_____<br>SAMUEL C. KAPLAN</td></tr>
<tr><td>ALAN DORN<br>Acting Deputy Associate General Counsel<br>for Litigation</td><td>U.S. Department of Justice<br>Civil Division<br>Federal Programs Branch,<br>P.O. Box 883<br>Washington, DC  20044</td></tr>
<tr><td>DONALD H. ROMANO<br>Department of Health and Human Services</td><td>(202) 514-4686 (phone)<br>(202) 616-8202 (fax)<br>Federal Bar No. CT26054</td></tr>
<tr><td>Dated: February 15, 2005</td><td>Attorneys for Defendants</td></tr>
</table>

---

[9](...continued)

reimbursement does not mean that it violated the law so long as it took certain measures "to determine the legal liability of third parties" prior to payment, 42 U.S.C. § 433.138(a), and so long as it had not "established the probable existence of third party liability at the time the claim is filed. . . ." 42 C.F.R. § 433.139(b)(1). While plaintiff-intervenor alleges over and over in conclusory fashion that Connecticut violated the law, see, e.g., Pl. Opp. at 8, 23 and Plaintiff-Intervenors' Statement Pursuant to Local Rule 9(c)(1) ¶ 92, it never alleges facts sufficient to establish a violation of the law or regulations.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of February, 2005, a copy of the foregoing Reply to

Plaintiff-Intervenor's Opposition to Defendants' Motion for Summary Judgment and attached

Declaration of Donna L. Trufant was served, by Federal Express, addressed to the following:

> David Wynn
> Arent Fox
> 1675 Broadway, 25th Floor
> New York, New York 10019-5820

_____

SAMUEL C. KAPLAN