UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PATRICIA WILSON-COKER, : | |
| Commissioner of Social Services, et al., : | |
|    Plaintiffs, : | |
| : | |
| COMMUNITY VISITING NURSE AND : | |
| HOME CARE AGENCY, INC., et al., : | |
|    Plaintiff-Intervenors, : | |
| : | |
| v. : | Civ. No. 3:00CV1312 (CFD) |
| : | |
| MIKE LEAVITT, Secretary, United States : | |
| Department of Health and Human Services, et al., : | |
|    Defendants, and : | |
| : | |
| ASSOCIATED HOSPITAL SERVICE, and : | |
| UNITED STATES GOVERNMENT : | |
| SERVICES, INC. : | |
|    Additional Defendants. : | |

**RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

The original plaintiffs in this case were the Connecticut Department of Social Services (DSS), its commissioner, Patricia Wilson-Coker (referred to collectively as Connecticut), and three individuals who were eligible for both Medicare and Medicaid benefits and have received or are receiving home health care services as part of those benefits. They brought this action against Mike Leavitt,[1] Secretary of the U.S. Department of Health and Human Services ("DHHS"), and Thomas Scully, Administrator of the Centers for Medicare & Medicaid Services

---

[1] Substituted for Tommy Thompson, the former Secretary of Health and Human Services pursuant to Fed. R. Civ. P. 25 (d).

("CMMS")[2] (collectively the "federal defendants") with regard to an administrative policy implemented by the defendants in December 1999 restricting the ability of the State of Connecticut to recover from third parties the costs of home health care services provided to individuals eligible for both Medicare and Medicaid benefits. In March 2003, the original plaintiffs settled with the defendants and this policy was revoked.[3]

The plaintiff-intervenors[4] are four agencies–Community Visiting Nurse and Home Care, Inc., Med-Center Home Health Care, Inc., Priority Care, Inc., and Staff Builders Home Health Care, Inc.–that provide home health services to individuals who are dually eligible for Medicare and Medicaid benefits.[5] They named as additional defendants Associated Hospital Services and United Government Services, Inc., fiscal intermediaries who process Medicare claims for the federal government (collectively the "fiscal intermediaries").[6]

Currently pending are (1) the motion for summary judgment by the federal defendants and the fiscal intermediaries, and (2) the motion for summary judgment by the plaintiff-

---

[2] The Centers for Medicare & Medicaid Services was formerly known as the Health Care Financing Administration ("HCFA").

[3] On February 10, 2003, after considering objections from <u>inter alia</u> the plaintiff-intervenors, this Court approved the Settlement Agreement. <u>See</u> Dkt. No. 158.

[4] This Court granted the plaintiff-intervenors' motion to intervene on November 16, 2001. The operative complaint is the Amended Intervenor Complaint filed on January 4, 2002.

[5] The plaintiff-intervenors also purported to bring their claims on behalf of "other similarly situated home health agencies," but never filed a motion for class certification. Currently, only Med-Center objected to the defendants' motion for summary judgment and it appears that only Med-Center continues to pursue its claims in this litigation.

[6] In their memorandum of law in support of their motion to dismiss, the defendants indicated that the Secretary is representing these "additional defendants," as the Secretary is the real party of interest.

intervenor Med-Center Home Health Care, Inc.

### I.  Background and Procedural History

Medicare is a federally funded and administered health insurance program for elderly and disabled individuals who are covered by Social Security.  Medicaid is a welfare program providing health care for certain categories of the poor, including the elderly and disabled.  Both programs cover home health care services for low-income elderly and disabled individuals. Home health care services include, among other services, nursing care, physical or occupational therapy, medical social services, and the services of home health care aides.  Some low-income elderly and disabled individuals are dually eligible for Medicare and Medicaid benefits, including home health care services.

Both Medicare and Medicaid are administered by the Centers for Medicare & Medicaid Services, a division of the DHHS.  However, while Medicare is funded entirely by the federal government, Medicaid costs are shared equally by the federal government and state participants in the program, including the State of Connecticut.  State participants in Medicaid are also responsible for the day-to-day administration of Medicaid within guidelines established by the CMMS.

Medicare is the primary insurance coverage for dually-eligible individuals.  Thus, if dually-eligible individuals receive services covered by Medicare, Medicare will pay first and Medicaid will only pay the difference if Medicare's payment obligation does not at least equal the

amount the provider is entitled to under Medicaid.[7]

In the early 1990s, DSS launched a program known as the "Medicare Maximization" or "Third Party Liability" project ("TPL"). Under the TPL, Connecticut reviewed past Medicaid payments and identified claims it believed should have been paid by Medicare. When it identified such claims, Connecticut notified providers that it desired that they submit Medicare claims for a determination as to whether Medicare was liable for payment. Connecticut then filed a Notice of Intent to File Claims[8] pursuant to 42 C.F.R. § 424.45 (1996) with the fiscal intermediaries, indicating the dates of service and other information. A Notice of Intent triggers a six month deadline for the providers to submit the remainder of the information necessary for a claim. See 42 C.F.R. § 424.45(c) (1996).

In 1996, Connecticut filed Notices of Intent to file Medicare claims for a large number of Medicaid payments dating back to 1988, thus requiring the plaintiff-intervenors to submit information for the related services. The plaintiff-intervenors submitted the information requested by the fiscal intermediaries within the six month time limit for most of the claims identified by the TPL project. However, the plaintiff-intervenors failed to file complete information within six months of some of the claims.

---

[7]As a condition of Medicaid eligibility, the State of Connecticut must also seek payment from other third-parties such as health insurers. Medicaid coverage is also contingent on Medicaid beneficiaries assigning to the State of Connecticut their rights to receive payment for medical care. See 42 U.S.C. § 1396k(a). Connecticut law similarly provides that DSS is a subrogee of any right of recovery that a Medicaid beneficiary might have against a medical insurance provider for the costs of care paid by Medicaid. See Conn. Gen. Stat. § 17b-265.

[8] In 1996, Connecticut established that it was entitled to file Notices of Intent as the subrogee of dually eligible beneficiaries. See State of Conn. Dept. Of Income Maintenance v. Shalala, No. 2:91CV546 (AHN) (D.Conn. reccom'd ruling June 24, 1994, appr'd Aug. 25, 1994).

The fiscal intermediaries to which the plaintiff-intervenors submitted their Medicare claims, Associated Hospital Services of Maine ("AHS") and United Government Services ("UGS"), named by the plaintiff-intervenors as "additional defendants" in this case, denied these claims as untimely (i.e., issued "Time Limit Reject Notices"). The plaintiff-intervenors then requested hearings from the fiscal intermediaries regarding these decisions,[9] but the fiscal intermediaries rejected the requests. The plaintiff-intervenors then requested administrative appeals hearings from the Office of Hearings and Appeals of the Social Security Administration. Administrative Law Judge Bruce H. Zwecker issued a series of decisions dismissing the plaintiff-intervenors' requests for hearings, but remanding the claims to the fiscal intermediaries with instructions to treat the plaintiff-intervenors' requests for hearings as requests for reconsideration of the Time Limit Reject Notices. The fiscal intermediaries did not reconsider the Time Limit Reject Notices and DSS recouped their Medicaid payments from the plaintiff-intervenors. These claims, which total approximately $180,000,[10] are the ones at issue here.

The plaintiff-intervenors argue that DSS's recoupment of Medicaid reimbursement violates federal law. They seek an order directing DSS to return the recouped Medicaid reimbursements. In the alternative, the plaintiff-intervenors seek an order of mandamus under 28 U.S.C. § 1361 directing HHS to review and process the claims for home health services to determine if they are covered by Medicare, pursuant to ALJ Zwecker's order remanding the claims to the fiscal intermediaries. Finally, the plaintiff-intervenors seek declaratory judgment

---

[9]The plaintiff-intervenors Community Visiting Nurse and Home Care Agency, Inc. and Staff Builders Home Health Care, Inc. did not appeal the AHS decision.

[10] This amount includes only Med-Center's untimely claims.

requiring the federal defendants and fiscal intermediaries to accept and process their claims and preventing the federal defendants from allowing Connecticut to force providers to submit claims to Medicare.[11]

## II.     Summary Judgment Standard

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). The burden of showing that no genuine factual dispute exists rests upon the moving party. Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000) (citing Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1223 (2d Cir. 1994)). Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton, 202 F.3d at 134.

---

[11] The plaintiff-intervenors also sought declaratory judgment (1) preventing Connecticut from recouping Medicaid payments, (2) stating the procedure by which any Medicaid overpayments should be recouped, and (3) determining whether an overpayment exists and if so whether it may be recouped by Connecticut. These claims are rendered moot by the settlement between the original plaintiffs and defendants, which clarified the process by which Connecticut could make claims for Medicare payment, this Court's approval of that settlement, and this ruling granting summary judgment in favor of the defendants.

"When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

### III.     Cross-Motions for Summary Judgment

The federal defendants and fiscal intermediaries move for summary judgment on the plaintiff-intervenors claims against them.  They argue that they are entitled to summary judgment because (1) the ALJ's decisions do not require coverage determinations, and (2) the plaintiff-intervenors failed to state a cognizable claim under the declaratory judgment act.

Med-Center cross-moves for summary judgment on its claims against the federal defendants and fiscal intermediaries.  It argues that (1) the ALJ's decisions require the federal defendants and fiscal intermediaries to process its claims, and (2) it has stated a cognizable claim under the declaratory judgment act and is entitled to a declaration of its rights.

#### A.     The ALJ's Decisions Do Not Require Coverage Determinations

The defendants and Med-Center disagree about the import of the ALJ's decisions.  The defendants argue that (1) once the ALJ determined that he lacked jurisdiction, he did not have authority to order the fiscal intermediaries to take any action, and (2) the ALJ never ordered the fiscal intermediaries to make coverage and reimbursement determinations, but instead simply permitted the providers to seek reconsideration of the Time Limit Reject notices.  Med-Center argues that the ALJ ordered the fiscal intermediaries to process its claims and make coverage determinations.

##### (1)     The ALJ's Decisions

In a series of decisions issued in approximately 1998 and entitled "Order of Dismissal and Remand," the ALJ found that the plaintiff-intervenors did not have a right to an administrative hearing based on his finding that the Time Reject Notices included an implied initial determination of medicare coverage: "There has not been a reconsideration determination on this claim . . . [and] a person has a right to a hearing regarding any initial determination . . . only if such initial determination has been reconsidered by the Health Care Financing Administration."  The ALJ then found that:

> the unusual circumstances which prompted the appellant to file a request for a hearing require the Administrative Law Judge to take further action to prevent the appellant from being denied due process.  That further action is to remand this case back to the intermediary with instructions to treat the appellant's request for a hearing as a request for a reconsideration determination so that the appellant will not be denied the opportunity to exercise his right to use the administrative appeals procedure.

A representative example of the ALJ's decisions, which are all substantially identical, states in pertinent part that:

> The intermediary either made an initial determination that the services were not covered, and therefore section 1879 of the Social Security Act applied, or it made an initial determination that the services were covered and Health Care Financing Administration regulation 42 CFR §489.21 applied. . . .
> Since the determination that the provider could not charge the beneficiary for the services at issue was an initial determination, as defined in Health Care Financing Administration regulation 42 CFR § 405.70(c), the provider has a right to request a reconsideration under the provisions of Health Care regulations 42 CFR §§ 405.710 and 405.712.
> Although a party to an initial determination is expected to file a request for reconsideration within 60 days after the date of the notice of the initial determination, the notice of initial determination was defective in this case because it did not identify the determination that the provider could not charge the beneficiary for the services at issue as an initial determination and did not inform the appellant of his right to request reconsideration.  Health Care Administration regulation 42 CFR §405.702 states, in relevant part : " . . .These notices . . . shall state in detail the basis for the determination.  Such written notices shall also inform the individual and the provider of services of their right to reconsideration of the determination if they are dissatisfied

-8-

with the determination."

Although the request for hearing (which shall be treated as a request for reconsideration) was not filed within 60 days after the date of the notice of the initial determination, the defects in the notice of the initial determination provide the appellant with good cause for not filing a request for reconsideration within the 60 day time period. . . .

The intermediary <u>will</u> notify the parties about their rights to a hearing in its notice of the reconsideration determination.

An Administrative Law Judge of the Social Security Administration does not have the power to force the Health Care Financing Administration to follow its own rules and to respect basic principals of due process. A United States District Court would have such power. . . .

The fiscal intermediaries never issued reconsideration decisions and neither party[12] appealed the ALJ's ruling. Instead it appears that the fiscal intermediaries decided that Judge Zwecker was in error and simply ignored his orders: "Judge Zwecker directed AHS to reconsider its denial of Medicare payment for the services at issue in this case. Contrary to Judge Zwecker's opinion, however, AHS' decision to reject Med-Center's claim for payment as untimely was not an appealable 'initial determination' with respect to Med-Center. Accordingly, Med-Center is not entitled under the Medicare appeals regulations to a formal reconsideration of AHS' decision." <u>See</u> March 3, 1998 letter from DHHS to Med-Center.

### (1)    Interpretation of the ALJ's Decision

The ALJ's decision clearly intended that the fiscal intermediary issue reconsideration determinations in order to allow the plaintiff-intervenors the opportunity to obtain an administrative appeal. Further, the ALJ clearly intended to order the fiscal intermediaries to issue such an order based on the plaintiff-intervenors' existing requests for hearings and not

---

[12] The defendants claim that they had no appeal right because the ALJ ruled in their favor by dismissing the plaintiff-intervenors' request for a hearing. Further, the defendants maintain that no reconsideration decisions were issued because the plaintiff-intervenors never filed the claims.

merely to permit the plaintiff-intervenors to request reconsideration. However, the ALJ did not order the fiscal intermediary to make coverage determinations. Instead, the ALJ assumed that the Time Limit Reject Notices' provision that the plaintiff-intervenors were barred from seeking reimbursement from the beneficiaries implied that the fiscal intermediaries had already made undisclosed initial coverage determinations.

The ALJ reasoned that the fiscal intermediaries' findings that the beneficiary could not be charged meant that the fiscal intermediaries had found that (1) the services were not covered and either the service recipient or the provider should have known it <u>or</u> (2) the service recipient had coverage, but the provider failed to file the proper papers in a timely manner. Thus, according to the ALJ, the fiscal intermediaries must have made a coverage determination and erred by failing to properly disclose those determinations and by failing to reconsider those determinations.

However, the ALJ's conclusion that the Time Limit Rejection Notices included undisclosed initial coverage determinations was unfounded. Instead Medicare providers are barred from seeking reimbursement from beneficiaries <u>whenever</u> the provider is responsible for failing to file a timely claim, regardless of benefit eligibility. The Home Health Agency Manual published by the Center for Medicare and Medicaid Services provides:

> Where the beneficiary request was filed timely (or would have been filed timely had the agency taken action to obtain a request from the patient whom the provider knew or had reason to believe might be a beneficiary) but the provider is responsible for not filing a timely claim, the provider may not charge the beneficiary for the services except for such deductible and/or coinsurance amounts as would have been appropriate if Medicare payment had been made.

Home Health Agency Manual, Section 236.

In sum, the ALJ's decisions directed the Fiscal intermediaries to issue reconsideration

decisions, not initial determinations. However, because no initial determinations had been made, nor indeed were they required, reconsideration decisions would have been inappropriate.

### (2) The ALJ's Jurisdiction

The federal defendants argue that the ALJ did not have authority to order the fiscal intermediaries to act because the plaintiff-intervenors were not entitled to a hearing and thus the ALJ did not have jurisdiction. An ALJ only has jurisdiction if the fiscal intermediary has issued a reconsideration decision or, in certain circumstances, if the fiscal intermediary has failed to act on a request for reconsideration. 42 C.F.R. § 405.1052(a) (2006) ("An ALJ dismisses a request for a hearing . . .[if] [t]he person or entity requesting a hearing has no right to it under § 405.1002."); 42 C.F.R. § 405.1002(a) (2006) (describing the right to an ALJ hearing). However, an ALJ may remand a case to a fiscal intermediary if it finds that the fiscal intermediary erroneously dismissed a request for reconsideration. 42 C.F.R. § 405.1034 (b) (2006) ("Consistent with § 405.1004 (b), the ALJ will remand a case to the appropriate QIC [Qualified Independent Contractor or fiscal intermediary] if the ALJ determines that a QIC's dismissal of a request for reconsideration was in error").

Thus, even if the ALJ's decisions did include orders to issue initial determinations, those orders were outside of the ALJ's jurisdiction.

Because there is no genuine issue of material fact regarding whether the fiscal intermediaries were required to process the plaintiff-intervenors untimely claims, the fiscal intermediaries are entitled to summary judgment on the plaintiff-intervenors claims against

them.

### B. Declaratory Judgment

The federal defendants argue that the Court lacks subject-matter jurisdiction over the plaintiff-intervenors' request for declaratory judgment, and that, once the Court determines whether the ALJ's ruling's require coverage determinations, there will be no active controversy between the parties.

Med-center argues that it is entitled to summary declaratory judgment against the federal defendants. In particular, it argues that it is entitled to a declaration that the federal defendants must process its claims, and that the federal defendants are in violation of federal law for permitting Connecticut to seek recoupment of payments made to dually eligible individuals.

#### a. Declaratory Judgment Regarding Processing the Providers' Claims

As described above, the Court finds that the fiscal intermediaries are not required to process the providers' untimely claims. Accordingly, summary judgment in favor of the defendants is granted on this aspect of the plaintiff-intervenors request for declaratory judgment.

#### b. Declaratory Judgment that the Federal Defendants Must Prevent Connecticut from Seeking Recoupment

Med-Center is also seeking a declaration that the federal defendants are in violation of federal law by permitting Connecticut to seek recoupments. However, this claim was rendered moot by this Court's approval of the Settlement Agreement between the plaintiffs and defendants.

**IV.     Conclusion**

The defendants' motion for summary judgment [Dkt. No. 178] is GRANTED.  Med-Center's motion for summary judgment [Dkt. No. 182] is DENIED.  The plaintiff-intervenors remaining claims against the plaintiffs are rendered moot by the settlement between the plaintiffs and defendants and this ruling.  Accordingly, judgment is entered for the defendants, and the clerk is ordered to close this case.


SO ORDERED this __11th__ day of September 2007 at Hartford, Connecticut.


       /s/ Christopher F. Droney_____
CHRISTOPHER F. DRONEY
UNITED STATES DISTRICT JUDGE